JOHN McKENZIE *vs*. MISSISSIPPI & RUM RIVER BOOM COMPANY.

July 11, 1882.

**Constitution—Taking of Property for Public Use—Occasional Overflow.—** *Weaver* v. *Mississippi & Rum River Boom Co.*, 28 Minn. 534, followed and applied. Where, on account of a high stage of water, which may reasonably be expected to occur at intervals of a few years, (or, as in the present instance, in two successive years,) the lands and crops of a riparian owner are, without his consent, damaged by an overflow of water occasioned by a river boom, there is a taking of the lands which cannot be justified by the owner of the boom without compensation paid or secured.

Appeal by defendant from an order of the district court for Hennepin county, *Young*, J., presiding, refusing a new trial, after verdict of $300 for plaintiff. The case is stated in the opinion.

*McNair & Gilfillan*, for appellant.

To constitute a tort, both a wrong and damage must co-operate. *Damnum absque injuria* will not give a cause of action. Cooley on Torts, 60, 62; Moak's Underhill on Torts, 5. The rule of law having special application to this case is as follows: "If a party in the exercise of a legal right, more especially one conferred by express statute, does an injury to another's property, he is not liable for damages unless they were caused by his want of the care and skill ordinarily exercised in like cases. No action lies for an injury done by a party in the execution of a public trust, acting with due skill and caution and within the scope of his authority." 1 Hilliard on Torts, 112; 1 Wait's Act. & Def. 146; 2 Wait's Act. & Def. 115; Cooley on Torts, 81.

It is well settled that, in the absence of legislation on the part of the United States, the state within whose boundaries navigable rivers lie may legislate with respect thereto, and may authorize the construction of wharves, piers, booms, dams, and other structures in aid of navigation; also, that the state may delegate to a corporation the power to construct and maintain such structures; that, when constructed and maintained under such delegated authority, the neces-

sity and utility of such structures cannot be questioned by private parties, and that the acts of defendant complained of as inflicting damage upon plaintiff's land were done in the proper exercise of their delegated powers, and in aid of the navigation of Rum river. *Cotton* v. *Mississippi & Rum River Boom Co.*, 22 Minn. 372; *Willson* v. *Blackbird Creek Marsh Co.*, 2 Pet. 245; *Gilman* v. *Philadelphia*, 3 Wall. 713; *Pound* v. *Turck*, 95 U. S. 459; *Wisconsin River Improvement Co.* v. *Manson*, 43 Wis. 255; *Heerman* v. *Beef Slough Mf'g Co.*, 1 Fed. Rep. 145; *Transportation Co.* v. *Chicago*, 99 U. S. 635.

The public interest in respect to the navigation and control of logs and timber requiring concerted and centralized action, defendant, having been charged with and having undertaken the performance of this public duty, stands upon the same footing with municipal corporations and other instrumentalities upon which have been devolved the powers of the state for the general benefit. It represents, in large measure, the sovereignty of the state in the exercise of its public police powers. When therefore it performs its duties with due care and diligence, and does not unnecessarily invade and encroach upon private property and rights, it cannot be held responsible for all incidental, temporary and remote damages. To hold it so responsible is to defeat the very object of its existence, and render the performance of its public duties impracticable. *Goszler* v. *Corporation of Georgetown*, 6 Wheat. 593; *Callender* v. *Marsh*, 1 Pick. 418; *Green* v. *Borough of Reading*, 9 Watts, 282; *O'Connor* v. *Pittsburg*, 18 Pa. St. 187; *Smith* v. *Corporation of Washington*, 20 How. 135; *Lansing* v. *Smith*, 8 Cow. 146; *Radcliff's Ex'rs* v. *Mayor, etc.*, 4 N. Y. 195; *Gould* v. *Hudson River R. Co.*, 6 N. Y. 522; *Governor* v. *Meredith*, 4 Term Rep. 794; *Boulton* v. *Crowther*, 2 Barn. & Cress. 703; *Hollister* v. *Union Co.*, 9 Conn. 435; *Alexander* v. *City of Milwaukee*, 16 Wis. 247; *Sutton* v. *Clarke*, 6 Taunt. 29; *Whitehouse* v. *Birmingham Canal Co.*, 27 L. J. Exch. 25; *Steele* v. *Western Lock Navigation Co.*, 2 John. 283; *Rex* v. *Com'rs of Sewers*, 8 Barn. & Cress. 355; *Sprague* v. *City of Worcester*, 13 Gray, 193; *West Branch, etc., Canal Co.* v. *Mulliner*, 68 Pa. St. 357; *Monongahela Navigation Co.* v. *Coons*, 6 Watts & S. 101; *Susquehanna Canal Co.* v. *Wright*, 9 Watts & S. 9. This is also true in grading public streets. *Wilson*

v. *Mayor, etc.*, 1 Denio, 595; *Hoyt* v. *City of Hudson*, 27 Wis. 656; Dillon on Mun. Corp. § 800.

Every public improvement must, almost of necessity, more or less affect individual convenience and property; and, when the injury sustained is remote and consequential, it is *damnum absque injuria*, and is to be borne as part of the price to be paid for the advantages of the social condition. *Thorpe* v. *Rutland & B. R. Co.*, 27 Vt. 140; *Lansing* v. *Smith*, 8 Cow. 146; Cooley on Const. Lim. 589.

In the case of *Weaver* v. *Mississippi & Rum River Boom Co.*, 28 Minn. 534, the defendant had actually taken and occupied the land of plaintiff with logs and piers. This occupation was shown to be not casual or accidental, but one which was permanent and must inevitably continue, and of such a character as to effectually destroy the usefulness of the land for plaintiff. An examination of the authorities cited and relied on by the court in that case will show that in every one, where there was any taking or occupation under similar facts, the taking or occupation was direct, voluntary and permanent. In the present case the occupation by water which is complained of was not the direct act of the defendant, or one that it could have foreseen or prevented. It was merely temporal and consequential.

Is the taking complained of such in its character as would sustain condemnation proceedings? Unless it is, certainly defendant cannot be held liable in this action. But to deprive plaintiff of his property under condemnation proceedings, the necessity for such taking being based upon the apprehension that once in seven or eight years the property is likely to be invaded by a flood and a few logs, would be an enormity that no court would countenance.

The maxim, *causa proxima et non remota spectatur*, is directly in point in this case. The rise of water in the spring was the proximate cause of injury, and the acts of the defendant the remote cause. Cooley on Torts, 68; Broom's Legal Maxims, 216; 1 Addison on Torts, 6; *Carstairs* v. *Taylor*, L. R. 6 Exch. 217; *Boulton* v. *Midland G. W. Ry. Co.*, Irish L. R. 7 C. L. 169; *Dunn* v. *Birmingham Canal Co.*, L. R. 7 Q. B. 244; *Snook* v. *Town Council of Brantford*, 14 U. C. Q. B. 255; *Blyth* v. *Birmingham Water Works Co.*, 25 L. J. Exch. 212; *Morrison* v. *Davis*, 20 Pa. St. 171; *Denny* v. *N. Y. C. R. Co.*, 13

Gray, 481; *Railroad Co.* v. *Reeves*, 10 Wall. 176; *Bellinger* v. *N. Y. C. R. Co.*, 23 N. Y. 42; *Selden* v. *Del. & Hud. Canal Co.*, 29 N. Y. 634; *Smith* v. *Agawam Canal Co.*, 2 Allen, 355; *Inhabitants of China* v. *Southwick*, 12 Me. 238.

*Levi & Cray* and *M. Q. Butterfield*, for respondent.

BERRY, J.   During the years 1880 and 1881, plaintiff was in the possession and occupation of a tract of land situated on the left bank of Rum river, in Anoka county, and embracing the shore thereof for about three-quarters of a mile.   Rum river is a navigable stream, under the laws of the United States, and of sufficient size for floating logs and lumber, and much used for that purpose.   Prior to 1880 defendant had erected a boom across the river, with reference to the holding and running of logs, under a charter granted by the territory of Minnesota, May 21, 1857, and acts amendatory.   The plaintiff brings this action for damages, alleging that, by reason of the wrongful and negligent manner in which the boom was constructed and maintained, the water of the river was thrown upon the tract of land mentioned, large quantities of logs, sand, etc., carried and left thereon, and the growing crops destroyed.   Aside from denials of the damage alleged, and that it was caused by the boom, the defences set up in the answer are two:  *First*, defendant denies that the boom was wrongfully or negligently constructed or maintained, and alleges that it was constructed and maintained in accordance with its charter, and that the boom as constructed and maintained was necessary to the performance of the duties by the charter imposed.  *Second*, the answer sets up a lease or license from plaintiff, authorizing defendant to do the things complained of.

As respects this second defence and the denials of damage, and that it was caused by the boom, it is unnecessary to speak at length. The jury have found the facts adversely to the defendant, and upon evidence of such a character that the finding cannot be disturbed. Some question is made upon the propriety of a refusal by the court to give an instruction requested by the defendant in reference to the second defence, but we are of opinion that as respects the subject of the request the jury were sufficiently instructed in the general

charge of the court, or at least quite as favorably to the defendant as the applicable rules of law permit.

The main controversy in the case relates to the first defence mentioned, and, in substance, the question raised comes to this: If it be admitted—as it appears to have been upon the trial—(1) that defendant's boom was constructed and maintained in accordance with its charter; (2) that it was necessary that it should be constructed and maintained as it was, in order to the performance of the duties by charter imposed upon defendant; and (3) that it was not, with reference to these two propositions, negligently constructed or maintained,—is the defendant liable, if, in times of high water of a stage unusual, yet such as occurs and may be expected to occur at intervals of some years, the water of the river is so raised, in consequence of the construction and maintenance of the booms, as to overflow the land of a riparian owner to the damage thereof and of the crops growing thereon?

In our opinion this question is substantially answered in the affirmative in the case of *Weaver* v. *Miss. & Rum River Boom Co.*, 28 Minn. 534. See, also, *Grand Rapids Booming Co.* v. *Jarvis*, 30 Mich. 308. In the *Weaver Case* it appeared that the effect of constructing and maintaining the boom therein complained of "was to cause the logs to collect in it, and thereby raise the water in the river, and turn it over and upon the lands of the plaintiff, and carry with it in high water large quantities of logs and drift, which, when the water subsided, were left stranded upon such lands so as effectually to destroy or impair their usefulness." This was held to be a *taking* of the property of Weaver, (the plaintiff in that action,) and a taking which, if not consented to by the owner of land, was wrongful and unlawful, unless compensation therefor was paid or secured under the eminent domain. In that case, as in this, it was urged that "if a party in the exercise of a legal right, more especially one conferred by statute, does an injury to another's property, he is not liable for damages, unless they were caused by his want of the care and skill ordinarily exercised in like cases." To this suggestion it was answered, as it may well be in the present case, that the rule invoked,

though sound when properly understood and applied, was not applicable to the case in hand, because the defendant, in damaging the plaintiff's property, was not exercising a legal right, for, notwithstanding its charter, it could not lawfully exercise the power of building and maintaining its boom so as to take private property without compensation.

Unless the *Weaver Case* can be materially distinguished from this at bar it is controlling. The defendant's counsel undertakes to draw a material distinction in this way. He claims that in the *Weaver Case* the evidence showed that the effect of maintaining the boom, irrespective of freshets or floods, or other extrinsic causes, was to accumulate upon Weaver's land large quantities of logs and drift, so as to effectually destroy or impair its usefulness, and that this effect must inevitably continue under the conditions shown to exist. He further claims that this court decided that these facts, exhibiting an actual and threatened permanent occupation of property, constituted a *taking* within the meaning of the constitution. In the case at bar the occupation of the plaintiff's premises is occasional and temporary, occurring not even every year, but once or twice in a few years, (perhaps seven or eight,) and lasting for a few weeks only in the years when it does occur. In our opinion the distinction between the cases is circumstantial merely. Both are governed by the same principle. The case at bar is not one in which the damage suffered by plaintiff is occasioned by some extraordinary cause which no prudence could be expected to foresee or guard against,—as, for instance, an earthquake or a waterspout,—but by causes which, as shown by the past history of the river, may reasonably be expected to appear and operate at intervals of a few years, or, as in this instance, in two successive years; causes which, in consequence of the existence and maintenance of defendant's boom, may reasonably be expected to work more or less damage to plaintiff's land, and the crops thereon growing. To maintain a boom which, in the usual course of things, will have this effect once or twice in the course of seven or eight years, is just as much a taking or appropriation of plaintiff's property as it would be if a like effect occurred every year, or every two years, or during those months of each year when the

boom is in use. The taking may not have the same extent or duration, it may not exclude the plaintiff from the use of his property for so much of the time, and consequently it may not impair his rights or damage him in the same degree as if it were permanent and constant; but, as far as it goes, it is nevertheless a taking. *Eaton v. B., C. & M. R. Co.*, 51 N. H. 504. It is an appropriation of property *pro tanto*.

The counsel for the defendant propounds, as a test question upon the matter of taking, the inquiry whether facts such as are above stated would justify a taking upon proper condemnation proceedings. We can conceive of no reason why they would not. If it is reasonably necessary for the purpose of the defendant as a boom company that it should so construct and maintain its boom as to produce such a state of facts, why can it not invoke the eminent domain? or, at least, why can it not be authorized so to do as in analogous cases? Where it appears that public necessity or interest demands a highway, it was never heard that the power to acquire a right of way by the eminent domain depended upon the extent to which the proposed highway will be travelled, and the land-owner excluded from the use of the soil. These considerations are, in our opinion, decisive of this appeal.

We have endeavored fully and fairly to consider the suggestions which the defendant's counsel has so clearly and forcibly presented in his learned and elaborate brief, as well as the authorities arrayed in their support; but we are unable to distinguish this case in principle from the *Weaver Case*, or to perceive any sound reason for receding from the position therein taken by this court.

The order denying a new trial is accordingly affirmed.