CARL J. CARLSON v. ST. LOUIS RIVER DAM & IMPROVEMENT
COMPANY.

July 1, 1898.

Nos. 11,017—(158).

**Collecting Water behind Dams in Stream—Flooding Land below Dam—Eminent Domain—Const. art. 1, § 13.**

Several miles above plaintiff's land the defendant corporation built two dams across the Cloquet river and one of its tributaries, each 20 feet high, and thereby restrained and collected large quantities of water of said streams, and, by means of sluices, flood gates and locks, discharged said water in large volumes into the channel of said Cloquet river below said dams, whereby said river suddenly rose above its usual, natural and ordinary high-water mark, and thereby overflowed the plaintiff's land, and greatly injured and damaged the same. *Held*, that this was a taking of the plaintiff's land, within the meaning of Const. art. 1, § 13, which the defendant had no right to do without plaintiff's consent, or without first paying compensation therefor.

**Corporation—Right to Build Dam Subordinate to Right of Riparian Owner.**

Conceding without deciding that the defendant corporation, under the power conferred upon it by statute, has the right to build dams across navigable streams for the purpose of aiding in floating logs to market, and to mills during seasons of low water, yet this right is subordinate to that of the riparian owner to have his land free from overflow and

damage caused thereby, if such damage is the result of so raising the waters beyond the natural, usual and ordinary high-water mark.

### Same—Injunction Proper Remedy.

As the defendant has illegally caused the plaintiff's land to be over-flowed, and thereby damaged it, and as it threatens and intends to continue so to do, an injunction is a proper remedy.

### Same—Rejection of Evidence no Error.

The trial court committed no error in refusing defendant permission to introduce certain evidence, as it was immaterial.

Action in the district court for St. Louis county to enjoin defendant from flooding plaintiff's land, and for $500 damages for flooding the same in 1895 and 1896. The cause was tried before Moer, J., without a jury, and judgment was ordered for plaintiff, awarding the injunction prayed for in the complaint, and $15 damages. From an order denying its motion for a new trial, defendant appealed. Affirmed.

At the trial, defendant offered to prove that Boulder creek flows into the Cloquet river, that the Cloquet river runs into the St. Louis river and the St. Louis river into Lake Superior; that upon the Boulder and other tributaries of the Cloquet, above defendant's dams, other streams empty into the Cloquet; that on all of said streams there are large quantities of standing pine timber; that there are no facilities for getting said timber to the market except by driving the same down said stream and tributaries; that, as the country has been settled and timber cut down, the extremes of freshets and drouths have been intensified; that during the last five years the annual cut of pine saw logs that has floated down the Cloquet and its tributaries to market has amounted approximately to forty million feet per annum; that all of the logs so cut were intended for and conveyed to market, and that it would have been impossible, during said years, and will be impossible in the future, to float said logs in such quantities, or approximating the same, down said Boulder creek and said Cloquet river and its tributaries, without at times using the dam referred to in plaintiff's complaint, for the purpose of gathering a head of water, and venting the same to float the logs over the shoals below said dams; that no more water has been vented from said dams to aid in driving said logs than was

73 M.—9

reasonably necessary; that defendant has at all times used reasonable care and skill in the use and management of said dams, and in venting the water therefrom, for the purpose of floating logs below said dams; and that defendant has never carelessly or negligently operated said dams; that defendant has vented no more water from said dams than has been necessary to float said logs over the rapids below said dams. The court refused to receive this evidence.

*Clapp & Macartney*, for appellant.

The appellant's argument is stated in the third paragraph of the opinion. In support of that contention appellant cited the following cases: Page v. Mille Lacs Lumber Co., 53 Minn. 492; Doucette v. Little Falls Imp. & Nav. Co., 71 Minn. 206; Minneapolis M. Co. v. Water Commrs., 56 Minn. 485; Red River R. M. v. Wright, 30 Minn. 249; Field v. Apple River, 67 Wis. 569; Lawler v. Baring, 56 Me. 443; Thunder Bay v. Speechly, 31 Mich. 336; Middleton v. Flat River, 27 Mich. 533; Buchanan v. Grand River, 48 Mich. 364; Thompson v. Androscoggin, 54 N. H. 545; Eaton v. Boston, 51 N. H. 504; Brown v. Collins, 53 N. H. 442; Transportation Co. v. Chicago, 99 U. S. 635; Pumpelly v. Green Bay Co., 13 Wall. 166; High Bridge v. U. S., 69 Fed. 320; Gould, Waters, § 90.

*Eckman & Stevenson*, for respondent.

Neither the state nor any one else can have the right to overflow, or otherwise take or use, private property or property outside of the bed of the stream for any purpose, without making compensation therefor. In re Minnetonka Lake, 56 Minn. 513; Weaver v. Mississippi & R. R. Boom Co., 28 Minn. 534; McKenzie v. Mississippi & R. R. Boom Co., 29 Minn. 288; Hackstack v. Keshena, 66 Wis. 439.

BUCK, J.

The plaintiff owns a farm containing 63 acres, through which flows the Cloquet river, the waters of which are discharged into the St. Louis river and thence flow into Lake Superior. The defendant constructed and owns a dam, 20 feet high, extending across said Cloquet river, and there constructed sluices, flood gates and locks on the said dam, 12 feet high, which can be opened and closed by the defendant at will; and, when closed, the water in said river

gathers and collects above said dam, and is retained in great quantities. The defendant also built a similar dam, with similar appurtenances, about 10 miles further up said stream, which also gathered said water the same as the other dam. There is a tributary to said Cloquet river called "Boulder Creek," which discharges itself into the Cloquet river above the plaintiff's land. Heretofore the defendant also built across said creek a dam and appurtenances similar to those built by it across Cloquet river, and which collected and retained large quantities of water above said dam.

The defendant is a corporation duly created and organized under the laws of this state, for the avowed purpose, as set forth in its articles of incorporation, of driving logs in the St. Louis river and its tributaries, and of improving said streams for log-driving purposes by clearing and straightening the channel thereof, closing sloughs, erecting sluiceways, booms of all kinds, side-rolling, sluicing and flooding dams, or otherwise facilitating the running of loose logs and timber down said streams. The plaintiff resides upon said land, and uses the same for agricultural purposes. He brought this action to recover damages caused by the defendant during the years 1895 and 1896 by damming up the waters in said streams, and discharging the same into the stream below, so as to cause the water in the Cloquet river to overflow its banks and flow over plaintiff's land. The action was tried by the court, and it ordered judgment for the plaintiff in the sum of $15 damages, and for a permanent injunction as prayed for in the complaint.

The appellant claims that, under the statutes and decisions of this state, a stream that is used for driving logs, with or without the aid, at times, of artificial means, is a navigable stream; that one of the functions of said stream is its use in getting logs to market; that, while the logs may be owned and their traffic conducted by individuals or corporations, the right of navigation is a public right; that the riparian owner on such stream takes his title subject to this public use, and in legal contemplation the same as the owner of lands adjoining a street or highway; and that if the use is necessary, and exercised with care and caution, the necessary damage is a burden incident to the location of the land, and is

damnum absque injuria; and that, while the land upon which this burden is imposed might be condemned for that purpose, yet the defendant, being a quasi public corporation, is entitled to all the rights to navigate the river which the public possess; and that, though this navigation may impose a temporary and incidental burden, it does not impose any liability. In other words, it claims the legal right to build dams across natural nonnavigable streams, obstruct the natural flow of their waters, collect them in large quantities, and discharge them, as its necessities require, upon the lands of the riparian owner in such quantities as to raise the stream to an unnatural and unusual height, and thereby overflow his lands and destroy his crops, and otherwise injure his said property.

The court found as a fact in this case that the streams here involved were nonnavigable, and that the defendant, by means of its dams and appurtenances so constructed, was enabled to collect and restrain large quantities of waters of said streams, which it vented and discharged into said Cloquet river in unusual and unnatural quantities, whereby water flowed upon plaintiff's land to his damage. The evidence tends to show that the overflowing of plaintiff's land was not the result of a mere casual trespass, but the natural and necessary effect of the defendant's plan or scheme of improving the navigation of the stream, which will recur whenever these improvements are utilized.

This, in our opinion, was a taking of his property, which it had no right to do without compensation. It was an invasion or violation of plaintiff's private rights, which he suffered not in common with the public, but as damage solely to his own private property. We may concede without deciding that, under the power conferred by the state upon this defendant corporation, it has the right to build dams across streams not navigable in fact, for the purpose of aiding in floating logs to market and to mills during seasons of low water. Plaintiff has a right to insist that his land shall not be taken for private purposes at all, and not for public purposes without just compensation.

"The state has not the right, without making compensation, to take or destroy the property of riparian owners in making a water course navigable when it is not so by nature, or in appropriating

such water course to the public use by artificial erections or improvements." Weaver v Mississippi & R. R. Boom Co., 28 Minn. 534, 538, 11 N. W. 114.

McKenzie v. Mississippi & R. R. Boom Co., 29 Minn. 288, 13 N. W. 123; In re Minnetonka Lake Imp., 56 Minn. 513, 58 N. W. 295.

The rule laid down in Gould on Waters (section 103) is this:

"A corporation which is authorized by statute to construct booms upon a river for the purpose of holding and storing logs acquires thereby no right to appropriate and use the banks, except by the consent of the owners or in the exercise of the power of eminent domain. This property cannot be taken for a purely private purpose; and the fact that booming companies and companies for the improvement of the navigation are quasi public corporations, and hold their franchises for a public use, does not give them the privileges of a riparian owner, or enable them, by legislative authority, to devote the river banks to the purposes of their charter, without compensation to the riparian owners. Compensation is also necessary where the banks are flooded by public improvements, or by dams erected for the collection and storage of logs, or by a collection of logs in great numbers."

It may be that the construction of the dam, with locks and sluiceways, and the collection of waters, was a right conferred by statute, as well as the right to vent and discharge the same into the channel of the Cloquet river for the purpose of floating logs, and that in discharging such water in sufficient quantity or volume, if kept at or within the usual, natural and ordinary high-water mark, it only exercised a legal right; but the evidence shows that it went beyond this, and, in so doing, did not exercise any such right. It invaded the plaintiff's legal right by artificial means, whereby his premises were damaged,—a burden which plaintiff was under no obligation to submit to without compensation.

The defendant does not claim that any attempt was made to condemn plaintiff's land, and we are of the opinion that its rights were restricted to the use of the stream in such case so as not to raise the water above the usual, natural and ordinary high-water mark.

As the law does not permit the defendant to flow the plaintiff's land in this manner, and as it claims the right, intends and threatens to continue so to do, an injunction is a proper remedy. Morrill v. St. Anthony Falls W. P. Co., 26 Minn. 222, 2 N. W. 842.

As the extended offer to introduce certain evidence, excluded by the court, was not material, the court in this respect committed no error.

Order affirmed.

A petition for reargument having been presented, the following opinion was filed July 11, 1898.

PER CURIAM.

The substance of counsel's application for reargument is that we have ignored our former decisions holding that the rights of riparian owners on navigable streams are subject to the public right of navigation, and that any incidental injury which such owners may sustain, by reason of the lawful and reasonable exercise of this public right, is damnum absque injuria. In this, as in their original brief, counsel overlook the extent of, and the limitations upon, this public right of navigation as announced and explained in Re Minnetonka Lake, 56 Minn. 513, 58 N. W. 295, and other cases. The gist of the decision in the present case is not that the defendant was guilty of negligence in doing what it did, but that it had no right to raise the water to the extent it did without paying plaintiff compensation.

Application denied.