## GREAT NORTHERN RY. CO. v. QUIGG et al.

(District Court, W. D. Washington, N. D.   May 16, 1914.)

### No. 34.

1. HIGHWAYS (§ 115*)—DAMAGES FROM CONSTRUCTION—INJUNCTION.

A railroad company *held* not entitled to an injunction to restrain the construction of an important state highway which for a distance. was being built along the face of a cliff above complainant's tracks, necessitating blasting which threw rock and earth down upon such track, injuring the same and causing temporary delays in the movement of trains, where the contractors were solvent and able to respond in damages, and, by cooperation between them and complainant, danger of injury to trains or passengers could be practically obviated.

[Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 358-370, 372, 373; Dec. Dig. § 115.*]

2. EMINENT DOMAIN (§ 113*)—PROPERTY "DAMAGED" BY PUBLIC WORK—TEMPORARY INJURY.

In order that property shall be "damaged" by a public work, within the meaning of Const. Wash. art. 1, § 16, so as to entitle the owner to compensation paid or secured in advance, the injury must be of such a permanent character as to impair the value of the fee.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 236, 243, 265; Dec. Dig. § 113.*

For other definitions, see Words and Phrases, vol. 2, pp. 1812–1820; vol. 8, pp. 7625, 7626.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

In Equity. Suit by the Great Northern Railway Company against J. W. Quigg and J. A. Scaman, copartners. On motion by complainant for judgment on the pleadings. Denied.

F. V. Brown and F. C. Dorety, both of Seattle, Wash., for complainant.

Thomas M. Vance and H. L. Parr, both of Olympia, Wash., for defendants.

NETERER, District Judge. The complainant alleges in substance that it is a corporation organized and existing under and by virtue of the laws of the state of Minnesota, and engaged in business in the state of Washington, operating a line of railway between the cities of Portland, Or., Seattle, Wash., and Vancouver, province of British Columbia, passing through the cities of Everett, Mt. Vernon, Bellingham, and other points; that it owns a right of way over which its line of railway is constructed and operated approximately parallel to and adjoining the shore of Puget Sound; that in the conduct of its business as a common carrier it has and necessarily will operate a large number of passenger and freight trains over and along said railway tracks; that the said right of way and track running through and across the lands in issue are located upon an abrupt hillside rising from the shore of Puget Sound to an elevation of several hundred feet above the waters of Puget Sound; that the complainant's track and right of way are along said hillside near the foot thereof and at a very small elevation above said waters; that the defendants have entered into a contract with the state of Washington for the construction of a highway over and across portions of the land along said hillside above the railway line and within a distance of from 100 to 400 feet of complainant's track; that a large part of said highway is constructed and will have to be constructed in rock or in rocky ground; that for more than one month last past defendants have been engaged in constructing said highway and in the course of said work have set off heavy blasts of powder or other explosives and thereby loosened and thrown out large masses of rock and stone from said highway; that there is great danger of the rock and stone loosened by said defendants in setting blasts and otherwise being thrown down the hillside and onto the track of complainant; that three or four instances during said month large masses of stone weighing several tons have been thrown by the defendants from said highway upon the right of way and track of complainant, breaking and damaging rails and ties of the complainant, and delaying trains for periods varying from 1 to 3 hours and 40 minutes; that a large portion of the construction of said highway remains to be completed under such contract, and that the said defendants threaten to and will, unless restrained by said court, proceed to complete said highway and set off heavy blasts of powder and other explosives along said highway and hillside at points above the track of this defendant, and where the hillside slopes directly down to the track, and there is great danger of large masses of stone and rock being loosened and thrown upon the track of the complainant; that there is great and serious danger that the rock loosened by one of such

blasts, or left in a precarious condition by said defendants, will be thrown down and upon the track of the complainant as one of its trains is passing, and that it will wreck and destroy said train of complainant and kill its passengers and employés. It is further alleged that the defendants are about to enter upon the right of way of the complainant at two different points and to construct said highway across said right of way; and that damage has been occasioned to the complainant by reason of the acts of the defendants in the sum of $3,500.

The defendants, answering the bill of complainant, in substance admit the corporate capacity of the complainant and that it has operated a line of railway as alleged over the right of way as stated, admit that they have entered into a contract with the state of Washington for the construction of a public highway as stated, admit that the said highway is above the complainant's right of way, and that a large part of said public highway to be constructed will have to be constructed in rock or rocky ground; and in the course of said work it will be necessary to set off heavy blasts of powder or other explosives, and that the hillside slopes abruptly from the highway to the railway right of way, and that there is danger of rock and stone loosened by the defendants and said blasting being thrown or rolled down said hillside and onto the right of way of complainant, and "deny that, during the month last past, large masses of rock and stone weighing several tons have been thrown by said defendants upon the right of way and ties of complainant, breaking and damaging rails and ties of complainant and delaying its trains for periods varying from 1½ to 3 hours and 40 minutes." Defendants especially deny that the prosecution of the work under the prescribed contract did constitute, does constitute, or will constitute any menace to the safety of complainant's employés or to the property of the complainant, and deny the other allegations in the bill.

Defendants allege by way of affirmative defense that on the 29th day of May, 1913, a contract was awarded to them by the state of Washington for the construction of a state highway, known as the Pacific Highway, over and through the lands described in the complainant's bill; that pursuant to said contract the defendants entered upon the construction of the said highway under the immediate supervision, direction, and control of the said chief engineer of the state highway commission of Washington, and that:

"The major portion of construction required under the said contract has been completed, there remaining to be completed about 20 per cent. of the entire construction work. That lying closely adjacent to complainant's right of way there remains to be completed a portion of said highway not to exceed 2,000 feet. That within the said 2,000 feet there are several points and places at which and over which the work of construction will necessitate from its very nature and from the terms of defendant's contract, Exhibit 1, the removing of certain masses of rock so situated with relation to complainant's right of way that they may not be removed by any usual, practicable, known, and practiced engineering method without, to a greater or less extent, obstructing for very short periods of time the railway tracks of complainant and causing more or less inconvenience and delay in the operation of complainant's trains: That any and all obstruction and delay that may have occurred heretofore, or that shall occur hereafter, to the operation of plaintiff's trains are due and owing entirely and solely to the fact that the highway in course

of construction by the state of Washington may not be constructed in accordance with the terms of the contract made between the state and defendants, or at all, without such obstruction and minor or inconsiderable delay in operation. That the greater part of the work remaining to be done under the defendant's contract may and will be done without in any way interfering with the right of way of complainant or with its usual and proper operation of its trains. That desiring to carry out their contract with the state, in the manner and method least inconvenient to the complainant herein and before attempting the construction of any part of the said highway that would necessarily or might probably interfere with the operation of complainant's trains, defendants, on or about February 13, 1914, requested of complainant that it, at defendants' expense, nominate and furnish flagman qualified for the duties of a flagman, necessary equipment, temporary telephone service, and equipment usual, necessary, and proper under such circumstances, requesting at the same time that complainant's trains operating through the immediate neighborhood traversed by the state highway under construction, be operated under slow orders, as is usual and proper under like circumstances. That thereafter, and before any blasting or shooting or rock was done on any part of the construction work, where such shooting or blasting cause injury to complainant's trains or undue delay in their operation, defendants requested that extra rails might be furnished at the points of danger, at defendant's expense, so that any damage or inconvenience that might or would result to complainant from any of said shooting or blasting would be minimized and negatived as far as might be. That, according to the schedule of trains operated by complainant over its railway near the highway under construction, from about 8 o'clock in the morning until 12 o'clock noon, there are no regular scheduled trains operated over said stretches of railway track. That a knowledge of these conditions, and with a desire to minimize the necessary, consequential, and unavoidable damage and inconvenience that might or would result to complainant, defendants requested that a proper crew be supplied at defendants' expense, so that, between the said hours of 8 o'clock a. m. and 12 o'clock noon and at such times as not to interfere with the operation of plaintiff's trains, the rails over which complainant's trains operated might be removed, the shooting and blasting of rock occurring at said times, the right of way cleared from the resulting débris and the rails restored, so that complainant's trains might operate during the remainder of the said day without interruption or disturbance. That none of the requests described above were complied with by complainant, except that complainant has, since the making of the said request, furnished two competent flagmen for duty upon this danger stretch of its railway. That defendants have furnished and maintain on the said danger strip of railway at all times two flagmen, and a great part of the time three flagmen, charged with the duty of warning complainant's trains, and during all of said time have furnished three, and during a greater part of the said time have furnished four or five, men, charged solely with the duty of inspecting and watching the tracks of complainant to prevent accident or disaster to complainant's trains, employés, or passengers. That, within about five days of the making and filing of complainant's bill herein, complainant after direction so to do by the public service commission of the state of Washington, and not before, and not without said direction, gave to its operating department, which duly promulgated slow orders for the operation of its trains through its said danger zone. That prior thereto, and up to the time of the making of the said order by the said public service commission, as defendants are informed and believe and so state the fact to be, no slow order warning of any kind had been given by complainant to its employés, and the trains of complainant were operated over and through said danger zone at their usual rates of speed, from 20 to 30 miles per hour, without regard to the conditions made necessary by the construction of the state highway. That, as before said, the work of construction of the highway through this danger zone has been under constant inspection of the chief engineer of the state highway commission and under the daily and almost hourly inspection and supervision of the resident engineer representing the state highway commission and in charge of the said work. That, in doing the said work, the defendants have employed men and methods of proper skill and modern expedi-

ence. That the said work has been done as prudently, carefully, and cautiously as in the nature of things it may be done. That the character of the work, the method of its doing, and the standard of defendants' employés have been, during all of the said time and are now, as defendants so state and believe the fact to be, satisfactory to the said state highway commission, through its engineering department and in strict accordance with the literal terms and the actual spirit of the contract illustrated by Exhibit 1. That defendants are informed and believe that complainant's trains may be operated through the described lands with entire safety to the lives of the passengers and employés of the company and to the lives of the employés of the United States government in custody of its mail if the usual, proper, and customary precautions under like circumstances are taken by complainant for the protection of the lives of passengers and employés, and co-operation is had between the complainant and these defendants in the carrying out of the public functions devolving upon each of them."

It is further alleged: That any inconvenience and delay to complainant or damage occasioned by reason of the construction of the highway was not the result of any negligence on the part of the defendants or their employés, but that practically all of the damage that has occurred could have been avoided by the proper action and co-operation of complainant. That all delays and inconvenience of operation that have occurred have been necessarily incidental to the construction of said highway, or increased and aggravated by the negligence and failure to co-operate when requested by complainant. That any damages suffered because of the work described or that may consequently follow from the completion of said work are such as to do no irreparable injury to complainant, and for which, "as defendants are informed by their solicitors, learned in the law, adequate compensation might be obtained, if resulting from the wrongful or unlawful acts of the defendants or the state of Washington." That, if an injunction is issued as prayed in complainant's bill, defendants will be compelled to and must abandon and retire from their contract with the state of Washington for the construction of said road to their great and irreparable loss and damage.

"That defendants, as guaranteeing the faithful performance of the terms of their contract above mentioned, have entered into a bond with the state of Washington in the sum of $51,732. That in doing the said work defendants are in performance of a public function, having assumed the responsibility thereof by their contract, and that, if injunction is allowed as prayed, the said state highway may not be constructed, the public will be deprived of an artery deemed necessary, and the state of Washington will be foreclosed of its legal rights in the premises, without opportunity to be heard in a court of competent jurisdiction."

The complainant has moved for judgment on the pleadings, and:

"That final decree be entered herein enjoining and restraining the defendants and each of them and all of their servants and employés from the further prosecution of the work mentioned in the bill of complaint and from the further exploding of blasts of powder, or other explosives, along said highway and in the vicinity of the track of complainant, and the safety of its property, and that they be enjoined from casting any rock upon the property of the complainant and from setting off any blasts of explosives which will or may cause rock to fall upon complainant's property."

[1] This case was before the court on an application for a preliminary injunction, and the application was denied in an opinion filed on

the 6th day of April, 1914. Upon the argument on this motion it was said that work has been continuously prosecuted since the former hearing, and that, unless enjoined, will be completed within 20 days. No new conditions or developments are now presented. There are various issues presented by the answer and affirmative defense which require a trial before they can be disposed of, but counsel for complainant in open court waived claims for recovery against the blasting and throwing of rock upon the right of way of complainant. The issue here can be resolved into the following statement: The defendants, as contractors for the state of Washington, in the construction of this public highway will need to use powder and other explosives, and the use of such explosives will or may cause rock or débris to fall or roll upon the track of the complainant, to its damage.

It is urged that from the admitted facts it appears that by the blasting rock has been cast upon the track of the complainant, and that the same will occur in the future, and that the damage to the complainant by reason of loss in event of collision with such rock and the loss of travel over the line by reason of timidity on the part of the public because of such blasting is irreparable, and that the acts of the defendants are to be repeated, and therefore an injunction should be granted.

Many cases are cited. None of the cases cited are decisive here. In Sequim Bay Canning Co. v. Bugge, 49 Wash. 127, 94 Pac. 922, 16 Ann. Cas. 196, defendant was enjoined from digging clams on another's land. In Keil v. Wright, 135 Iowa, 383, 112 N. W. 633, 13 L. R. A. (N. S.) 184, 124 Am. St. Rep. 282, 14 Ann. Cas. 549, fowls were continually trespassing on another's premises. In Carlson v. St. Louis River D. & I. Co., 73 Minn. 128, 75 N. W. 1044, 41 L. R. A. 371, 72 Am. St. Rep. 610, defendant wrongfully caused complainant's land to be flooded. In Atchison, etc., v. Spaulding, 69 Kan. 431, 77 Pac. 106, 66 L. R. A. 587, 105 Am. St. Rep. 175, 2 Ann. Cas. 546, defendant was continuously riding on the rails of plaintiff's road by means of a bicycle, and the court held that it was a continuing menace to the safety of the public. In Connecticut, etc., Co. v. Holton, 32 Vt. 43, the court said that the defendant may not build a crossing at a place where he has no right to do so or remove turf from the right of way of plaintiff. In Gulf, etc., Ry. v. Puckett (Tex. Civ. App.) 82 S. W. 662, defendant was enjoined from using the complainant's railway for travel by means of a velocipede. The other cases cited are of no assistance.

It is also suggested on the part of the complainant that, if the court should find that the work to be performed in the construction of the highway was such a work of necessity and of such character and dignity that the public good required the construction, as a condition to the continuance of the work defendant should be required to enter into a bond to hold the complainant harmless from all damages which might be occasioned by reason of the prosecution of such work. In the opinion filed denying a preliminary injunction, this court said:

"The facts, as they appear from the record in this case and as developed upon the argument, show that the defendants are impressed with the seriousness of the work in which they are engaged, and no charge of any act of omission or commission is made which challenges the manner in which the work is being done. There is no allegation in the complaint, nor is it con-

tended upon the argument, that the defendants are insolvent and cannot respond in damages for any injury which they may occasion. The defendants, under the issue here, being financially responsible, I am satisfied that the facts as developed in this case are not sufficient to justify the court in granting a preliminary injunction. That inconvenience will be occasioned and some loss sustained for which no compensation can be made may not be questioned. The defendants are liable in an action at law for all damages occasioned by blasting operations which occasion injuries to complainant's property. I believe that the complainant has an adequate remedy at law; and its right being granted, and the conduct of the defendants being limited by law, a court of equity should not undertake to define those legal rights and compel the defendants to enter into a written arrangement as suggested to respond to certain enumerated expenditures or damages; and on failure to do so restrain the prosecution of the work. But the parties should be left unhampered to enforce their rights in a court of law."

It is contended that the holding of the Supreme Court of Washington in State ex rel. Smith v. Superior Court, 26 Wash. 278, 66 Pac. 385, and Hart v. Seattle, 45 Wash. 300, 88 Pac. 205, 13 Ann. Cas. 438, is decisive here. In each of these cases the city changed the grade of the streets and deprived the abutting owner of access, and consequently damaged his property. Archer v. Greenville Sand & Gravel Co., 233 U. S. 60, 34 Sup. Ct. 567, 58 L. Ed. ——, is cited with confidence; but in that case the defendant entered upon the land of complainant and removed the sand, and the court said:

"We think the bill shows a continuing trespass of such nature and of such character of injury that remedies at law by actions for damages would be inadequate and would besides entail repeated litigation."

I think it must be apparent that these cases do not aid in the solution of this issue.

The issue here is of peculiar concern. The complainant is practically an insurer of the safety of its passengers. It is necessarily placed at expense and great concern with relation to this work. It must guard and protect the traveling public and the investment made by its stockholders. It likewise owes a duty to the state. Its relation is of a quasi public nature. It has by its acts become an adopted creature of the state enjoying the rights and privileges provided by its laws and is subject to control by the laws and Constitution of Washington. Rem. & Bal. Code of Wash. § 8669. The state accords it the right of eminent domain, and by this privilege it had the right to have the necessity for the right of way over the land adjudicated by the courts on the authority of legislative enactment. The state, which has afforded these rights and permission to complainant to operate in the state under its supervision, by the same supervision now seeks to construct this public highway, a work of great public importance and greater local necessity. This work is being done, as disclosed by the record, by practical and experienced men, and has been carried almost to its consummation since the denial of the application for a preliminary injunction without further complaint of mishaps or interruption of traffic on complainant's road being made to the court. To hold to the contention of complainant would render the state impotent in this enterprise and destroy a large public work of public necessity.

[2] While the phrase "or damages" in section 16 of article 1 of the

Constitution of Washington would prevent this court from going to the full extent of the doctrine laid down by the Supreme Court in Gibson v. United States, 166 U. S. 269, yet the following principle stated on page 274 of 166 U. S., page 578 of 17 Sup. Ct. (41 L. Ed. 996), should be considered by the court where, as here, the complainant seeks to enjoin the prosecution of a public work which neither "takes" nor "damages" his property within the meaning of the Constitution requiring previous compensation.

"It is not, therefore, enough to set before us a case of moral wrong, without showing us that we have legal power to redress it. Beyond constitutional restraint or legislative power, there is none but the legislative will, tempered by its sense of justice, which has happily been sufficient, in most cases, to protect the citizen. Compensation has been provided for every injury which could be foreseen, whether within the constitutional injunction or not, in all laws for public works by the state or a corporation, though cases of damage have occurred which could neither, be anticipated nor brought within the benefit of the provision by the most strained construction."

In this case no easement is sought to be impressed or servitude imposed upon complainant's property; nor is the light, air, or access in any way obstructed; nor is any act of the defendants conducive to a damage to the value of complainant's property that the use or value is palpably impaired or stripped of incidents comprised within the conception of complete property rights, which bring to those rights quite as much value as the possession; nor does it amount to an interest which could be acquired by the right of eminent domain; nor could the state, before it proceeded with the work, be required to institute proceedings in condemnation to assess the damages to be sustained. The only acts complained of are personal tortious acts external to and away from the property. The damages contemplated by the constitutional provision must be such a permanent interest in the land as will impair the value of the fee, and not such temporary act as disclosed by the record here. The only right which could be obtained, adopting complainant's theory, would be the right to commit a tort by casting temporarily, on the complainant's property, rock and débris during the continuance of the work, a right which could not be acquired by any proceeding. I am convinced that the acts complained of do not "damage" complainant's property, within the meaning of the constitutional provision requiring previous compensation, and that, all equities considered, the motion for judgment should be denied.

It is so ordered.