| 63 | 181 |
| 65 | 547 |

## FRANK J. FARRAND v. NEHEMIAH P. CLARKE.[1]

December 13, 1895.

Nos. 9570—(162).

**Condemnation Proceedings—Division of Award—Boomage.**

> Plaintiff, being the owner of a tract of land, granted by deed to defendant certain "boomage" and shore rights. Subsequently a corporation, empowered to take private property for public uses, acquired, by condemnation proceedings, the right to overflow and otherwise occupy the same land. The commissioners appointed to determine the amount of compensation to be paid awarded a gross sum, but did not apportion it between plaintiff and defendant. This award was paid into court. The deed and the condemnation proceeding construed, and *held*, that greater rights in the land were acquired under the latter than under the former, and that the court erred in ordering the whole award to be paid over to the defendant.

Appeal by Frank J. Farrand from an order of the district court for Morrison county, Baxter, J., directing the clerk of said court to pay to Nehemiah P. Clarke the amount of an award in condemnation proceedings, and denying the motion of said Farrand for payment of said award to him. Reversed.

*Taylor, Calhoun & Rhodes*, for appellant.

*G. W. Stewart*, for respondent.

MITCHELL, J. Farrand, being the owner of an island in the Mississippi river containing about 22½ acres, in April, 1884, granted and conveyed to Clarke "all boomage, shore, and riparian rights incident and belonging to that" land, "including the right to enter upon said lands and fasten and hitch booms and boom sticks thereto, at such times as said" Clarke "may desire, and to any extent necessary for the purpose of constructing boom and booms on the Mississippi river adjacent to said lands for the boomage of logs and timber." In March, 1894, the Little Falls Improvement & Navigation Company, a corporation authorized to exercise the right of eminent domain, instituted proceedings to condemn for its use certain private property, including the island in question.

[1] Reported in 65 N. W. 361.

In its petition it alleged that in operating its booms and assorting works during the driving season it was necessary to stop in the river large quantities of logs in order to assort out of the general mass those that were to be manufactured at Little Falls, and thereby at times to form jams of logs in the river extending up above the assorting works to the lands described in the petition, and to overflow all of said lands, by maintaining said jams, to a greater depth than they would otherwise be overflowed; and also to take, overflow, and occupy the same for the purposes of the corporation by and with said jams and such piers, piling, and booms and other structures, and by and with its employés and servants. The notice or summons further alleged that its object was "to acquire the right to take, use, or overflow said lands, and all thereof, for the purposes hereinbefore and in said petition specified."

The court determined that public interests required the prosecution of the petitioner's enterprise, and that "the lands and real estate proposed to be taken by said petitioner as described in said petition [were] necessary for the purposes of such enterprise," and appointed commissioners to ascertain and determine the amount of compensation to be paid to the landowners. These commissioners awarded to the persons owning or interested in this island the sum of $800 as their compensation for the taking or injuriously affecting the same by reason of the construction and maintenance of the dam, boom, and other improvements set forth in the petition. They also found that Farrand was the owner in fee of the island, and that Clarke had "certain riparian rights appertaining thereto," but they made no apportionment of the money between them. The money having been deposited in court, Farrand made an application to the court for an order directing the whole of it to be paid over to him. Clarke opposed this, and made a counter motion that the whole of the money be ordered paid to him. The court ordered that the whole $800 should be paid to Clarke on the ground that it was only Clarke's interests in the land that were taken or injuriously affected, and that by the condemnation proceedings the improvement and navigation company acquired no further or other interest in the land than Clarke had acquired under his deed, and hence that none of Farrand's interests had been taken or injuriously affected. From this order Farrand appealed.

The whole difficulty has arisen from the failure of the commissioners

to award the damages to either Clarke or Farrand, or to apportion the damages between them. The applications or motions were heard on ex parte affidavits, and not upon evidence introduced as in the trial of an action, which would have been the right of either party if insisted on. The respective rights of Clarke and the improvement and navigation company are conclusively determined by the terms of the deed and of the condemnation proceedings, which cannot be contradicted or varied by parol evidence, although, as in other cases, evidence of extrinsic facts and circumstances is admissible to aid in applying the written language to the subject-matter. Parol evidence would also be admissible as to the extent to which the exercise of the rights acquired by the improvement and navigation company under the condemnation proceedings will injuriously affect the interests of Clarke and Farrand, respectively, in the land, in order to determine whether the award should be apportioned between them, and, if so, in what proportions. It is not necessary here to determine just what rights Clarke acquired under his deed, or what rights the improvement and navigation company acquired under the condemnation proceedings. The only question is, did the latter acquire other and greater rights than the former? If so, then some of Farrand's property has been taken, and he is entitled to a part of the award.

It is clear that under the condemnation proceedings the improvement and navigation company acquired the right to overflow the entire tract during the driving season by maintaining a dam, assorting works, and other structures, and thereby creating jams of logs in the river, extending from its assorting works up to and above the land in question. This amounts practically to a destruction of all beneficial use of the land by Farrand for any purpose. The rights acquired by Clarke under his deed were boomage, shore, and riparian rights incident and belonging to the land, including the right to enter upon the land and fasten and hitch booms and boom sticks thereto to the extent necessary for the purpose of constructing booms on the river, adjacent to the land, for the boomage of logs and lumber. The word "boomage" is a term of rather indefinite meaning. The usual definition of a boom is an inclosure formed upon the surface of a stream or other body of water by means of spars, for the purpose of collecting or storing logs or timber. They are usually formed by extending a series of spars for some distance at right angles to the shore, and then continu-

ing them up stream parallel to the shore, leaving the upper end open. As the logs float down stream, they are guided into the boom, and there arrested and held.    2 Am. & Eng. Enc. Law, 469.    This would seem to be, in a general way, the purpose for which Clarke was given the right to use this land by fastening his booms and boom sticks to it, and by entering upon the land for that purpose, and doubtless for any other purpose reasonably necessary to the maintenance and operation of the boom.    But the rights acquired by the improvement and navigation company were evidently much greater than these, and extended to the right to flood the whole island, and even to occupy it with "log jams."    No such broad construction can be given to the deed to Clarke. The court therefore erred in directing the whole award to be paid over to him.

Order reversed.