WILLIAM RASICOT v. LITTLE FALLS IMPROVEMENT & NAVIGATION COMPANY.[1]

July 17, 1896.

Nos. 10,059—(165).

**Deed—Grant of Boomage Rights—Construction—Setting back Water.**
   *Held*, that under a deed from plaintiff and his wife, whereby they granted to defendant's remote grantor certain boomage rights and privileges in a driving stream bordering on plaintiff's farm, taking into consideration the circumstances of the transaction, the particular situation of the parties, and the condition of the thing granted, defendant did not obtain the

[1] Reported in 68 N. W. 212.

right to deprive plaintiff of the beneficial use of his farm by maintaining booms and assorting works at a point two or three miles down the stream, whereby log jams were formed, and the water dammed and penned up so as to flood the farm and practically destroy its use.

Action in the district court for Morrison county to recover damages for overflowing plaintiff's land. The jury rendered a verdict in favor of plaintiff for $629.20, which sum, according to their special finding, included $125, assessed as damages for removing logs. From an order, Baxter, J., denying a motion for a new trial in case plaintiff should file a stipulation reducing the verdict by said sum of $125, defendant appealed. Affirmed.

*Clapp & Macartney* and *Lindbergh, Blanchard & Lindbergh,* for appellant.

*Taylor, Calhoun & Rhodes,* for respondent.

COLLINS, J.   From some time prior to the year 1882, plaintiff has been the owner and in possession of a farm situated on the east bank of the Mississippi river, a few miles above the city of Little Falls. That year, for the sum of $50, he granted and conveyed to N. P. Clarke and others, his wife joining in the deed,

"All the right, title, and interest in and to the use and enjoyment of the Mississippi river, the water thereof, and the land covered thereby, for the purpose of booming and holding logs, lumber, and timber therein, which the said parties of the first part, or either of them, now have by reason of their or either of them being now the owner or owners in fee simple of all"

—of said land, particularly describing the same.

Following the description in the deed of conveyance were these words:

"Hereby granting to the said parties of the second part, their heirs and assigns the sole, exclusive, and perpetual right to erect and construct all piers and booms; to drive and place all posts and piling that may be necessary and proper for the exercise of the right and privilege of booming and holding logs, lumber, and timber hereinbefore granted said parties of the second part, their heirs and assigns, having the right to place said piers, posts, and pilings, as well as whatsoever else may be necessary and proper for the booming and holding of logs, lumber, and timber, as aforesaid, either in said river or in the shore thereof, upon the real estate hereinbefore described; said parties of the second part, their heirs and assigns having the fur-

ther right to attach the said booms to the banks of said river wherever and whenever it may be proper and necessary, and by such means as may be proper and necessary."

Then followed some provisions of no consequence here.

The defendant corporation was organized under the law of this state in the year 1891, for the avowed purpose of improving and facilitating the navigation of the river from a point specifically named, and within the corporate limits of said city, to the mouth of Crow Wing river, several miles above plaintiff's farm, and to erect and maintain booms and such other structures as might be necessary for its business, and to boom, hold, handle, and assort, out of the general mass of logs and lumber coming down the river, such as were destined to be manufactured anywhere within the points heretofore mentioned.    Soon after its organization, defendant, through several mesne conveyances, succeeded to all of the rights secured by Clarke and his associates under and by virtue of the deed of conveyance executed and delivered by plaintiff and his wife.

It does not appear from the record that defendant has in any direct manner exercised its rights or privileges obtained through the original grant; but, from the evidence introduced on the trial in support of the allegations of the complaint, it undisputedly appeared that defendant had constructed piers and booms some two or three miles below plaintiff's farm, and, at different times during the years 1892, 1893, and 1894, had held back, for the purpose of assorting, large quantities of logs and lumber, thereby causing the formation of large log jams in the stream; the inevitable result being to retard and dam up the waters, so that they overflowed the river banks, ran into the cellar of plaintiff's dwelling house, inundated his fields, destroyed his crops, and, if maintained, will ruin his entire farm.

This action was brought to recover the damages resulting from this overflow, and the claim made by defendant is that it obtained the right to flood the farm, to the extent stated, through the grant to Clarke and others, made for a consideration of $50, in 1882, about ten years prior to the construction of defendant's piers and booms some two miles down the river.

A construction of the language of the deed is therefore called for; and while we recognize the rule that the language of all grants is to be construed most strongly against the grantor, and in favor of the

65 M.—35

grantee, and, further, that the grant of the principal thing carries with it whatever is necessary to the beneficial enjoyment of the thing granted, we are further to remember that, in the construction of grants, the court ought to take into consideration the circumstances attendant upon the transaction, the particular situation of the parties, and the state of the thing granted, for the purpose of ascertaining the intention of the parties. We must also bear in mind that, if defendant's construction prevails, it will have the right to destroy plaintiff's dwelling house and farm by overflowing and flooding, whenever log jams are made as the result of its holding of logs and lumber at its assorting works, when, from the circumstances so far as shown, it would seem highly improbable that such an important right or privilege—one so disastrous to the grantors—was ever intended to be conveyed or obtained. A construction of the grant so objectionable to a sense of justice should only be permitted upon clear and unmistakable language. Fortunately, we have no such case before us.

Taking the circumstances, the particular situation of the parties, and the state of the thing granted, so far as these matters are disclosed, we find the owner and occupant of a farm bordered by the river, his wife joining in the conveyance, granting to other parties, who do not appear to have had any booms or booming privileges of any description elsewhere on the stream, or even to have been engaged in such business, or in any business connected therewith, the use and enjoyment of the river for log-booming purposes, in so far as the grantors themselves had such use and enjoyment by virtue of being owners of the land composing the farm. Incident to this was the grant of the right to erect piers and construct booms, to drive posts and piling, and to do whatever else might be necessary and proper for the booming of logs, in the river or on the shores, including the right to attach booms to the river banks whenever and wherever necessary, and by any proper means. This is what was granted, and nothing more, at a time long prior to the organization of defendant corporation, and many years before it erected the piers and constructed the booms and assorting works which have caused the running logs to form in jams, by reason of which plaintiff has been deprived of the beneficial use of his farm.

When we come to consider the language used in the deed in the light of the facts, we find that Clarke and his associates acquired nothing more than ordinary boomage, shore, and riparian rights and privileges, incident and belonging to plaintiff's land, including the right to place such structures, as piers, posts, and piling, as might be essential for the proper use and enjoyment of such rights and privileges upon the shores of the river, if desired, and to attach booms to such shores by any proper methods. The rights and privileges, so far as they related to plaintiff's land, were to use and occupy it to the extent necessary for the purpose of constructing and maintaining booms on the river adjacent to the land, for the boomage of logs and timber.

In fact, the grant, while more words were used in the conveyance itself, was of no greater rights and privileges than were granted in the deed considered in Farrand v. Clarke, 63 Minn. 181, 65 N. W. 361, where it was held that the rights acquired by such deed were much less than those acquired in certain condemnation proceedings whereby this same defendant company secured the right to flood certain land, and also to occupy it with log jams. That is what defendant now claims to have the right to do under the language of the grant herein involved. The language used does not warrant it, and, as a consequence, no such broad construction can be given to the deed of 1882. It did not give to the grantees or their assigns the right to flood the plaintiff's farm by means of booms and assorting works constructed and maintained down the river, although it did grant the right and privilege of boomage, with its necessary incidents, in the stream where it bordered on his land.

Order affirmed.