JAMES GRAVEL v. LITTLE FALLS IMPROVEMENT & NAVIGATION COMPANY.

December 2, 1898.

Nos. 11,465—(86).

Booms and Piers—Overflow of Land of Riparian Owners.

*Held*, following former decisions, that the defendant had no right, in the exercise of the public right of navigation, to construct booms and piers in the Mississippi river the natural and necessary effect of which would be to produce "log jams," which would cause the water of the river to rise above its natural height and overflow riparian lands situated above "high-water mark."

Same—Construction of Conveyance.

A conveyance by the riparian owner, granting the right to erect certain piers, booms and assorting works in the river, construed, and *held*

that, by necessary implication, it gave to the grantee the right to overflow the land of the grantor, so far as was necessary to the beneficial enjoyment of the right expressly granted, for the purpose for which the grant was made.

Action in the district court for Morrison county to recover $1,150 damages for the overflow of plaintiff's land by reason of the construction of certain piers and booms by the defendant. The other facts are stated in the opinion. Plaintiff had a verdict for the sum of $375. From an order, Searle, J., denying a motion for a new trial, defendant appealed. Reversed.

*Clapp & Macartney* and *Lindbergh, Blanchard & Lindbergh,* for appellant.

The defendant being a quasi public corporation, and as such entitled to all the rights which the public has in the Mississippi river, was entitled to make any reasonable use of the river in the exercise of the public right of navigation. See Cotton v. Mississippi & R. R. Boom Co., 22 Minn. 372; Cohn v. Wausau, 47 Wis. 314; Black v. La Crosse, 54 Wis. 659. To assort logs, under the circumstances of this case, is just as much navigation of the stream as driving logs therein. See Davis v. Winslow, 51 Me. 264, 293; Veazie v. Dwinel, 50 Me. 479; Page v. Mille Lacs Lumber Co., 53 Minn. 492. Land on navigable streams is subject to the dangers incident to the right of navigation, and when logs are driven, boomed or assorted in a stream, in an ordinarily careful and prudent manner, the owner is not liable for damages which may result to riparian owners. Coyne v. Mississippi & R. R. Boom Co., 72 Minn. 533; Doucette v. Little Falls Imp. & Nav. Co., 71 Minn. 206; Field v. Apple, 67 Wis. 569; Harold v. Jones, 86 Ala. 274; White River v. Nelson, 45 Mich. 578; Lawler v. Baring, 56 Me. 443; Hollister v. Union, 9 Conn. 435; Lansing v. Smith, 8 Cow. 146; Thompson v. Androscoggin, 54 N. H. 545, 558; Carter v. Thurston, 58 N. H. 104; Collins v. Howard, 65 N. H. 190; Falls v. Oconto, 87 Wis. 134; Black v. La Crosse, supra; Sands v. Manistee R. Imp. Co., 123 U. S. 288.

A deed is to be so construed as to give it some effect and force, if such construction does not violate express provisions in the instrument. People v. Storms, 97 N. Y. 364. The language of all grants

74 M.—27

is to be construed most strongly against the grantor, and in favor of the grantee. Paine v. Chandler, 23 N. Y. St. 357. The plaintiff having conveyed to defendant the right to maintain and operate assorting booms in the river adjacent to his property, he also must be considered to have conveyed whatever was necessary to the beneficial enjoyment of the thing granted and which it was in his power to convey. See Webster v. Potter, 105 Mass. 414; Scriver v. Smith, 100 N. Y. 471; Marston v. Stickney, 58 N. H. 609; Deacons v. Walker, 124 Mass. 69; Albee v. Hayden, 25 Minn. 267; Elliot v. Shepherd, 25 Me. 371; Simmons v. Cloonan, 81 N. Y. 557.

*John H. Rhodes* and *David T. Calhoun,* for respondent.

To overflow the lands of a riparian owner is not a right incidental to, or connected with, the right of navigation. Grand Rapids v. Jarvis, 30 Mich. 308. Nor to place in the stream artificial obstructions and thereby drive the water out of the bank and flood the surrounding country without making compensation. Weaver v. Mississippi & R. R. Boom Co., 28 Minn. 534; McKenzie v. Mississippi & R. R. Boom Co., 29 Minn. 288; Grand Rapids v. Jarvis, supra; Pumpelly v. Green Bay Co., 13 Wall. 166; Stout v. McAdams, 2 Scammon, 67; Eaton v. Boston, 51 N. H. 504; Crittenden v. Wilson, 5 Cow. 165; Lee v. Pembroke, 57 Me. 481; Angell, Water C. § 476; Farrand v. Clarke, 63 Minn. 181; O'Brien v. City of St. Paul, 25 Minn. 331; Pye v. City of Mankato, 36 Minn. 373.

The principle announced in the cases of Rasicot v. Little Falls Imp. & Nav. Co., 65 Minn. 543, and Farrand v. Clarke, supra, controls the construction of the deed in the case at bar. See also Dolliff v. Boston, 68 Me. 173; Buss v. Dyer, 125 Mass. 287; Harris v. Elliott, 10 Peters, 25; Gilbert v. Emerson, 55 Minn. 254; Bradshaw v. Duluth Imp. M. Co., 52 Minn. 59; Hanford v. St. Paul & Duluth R. Co., 43 Minn. 104.

MITCHELL, J.

The plaintiff was the owner of riparian land on the Mississippi river situated a short distance above Little Falls, and described as "lot one (1), section twenty-seven (27), township forty-one (41), of range thirty-two (32)." He brought this action to recover for injuries to the premises caused by the defendant unlawfully and

negligently building and maintaining piers and booms in the river, which caused log jams, which in turn caused the water to flow out of its natural channel and overflow plaintiff's land.

While denying the allegation of negligence or illegality, the answer of defendant admits that it has erected and maintained piers and booms in the river, and that these, at times, cause log jams, which result in the overflow of plaintiff's premises; but it justifies its acts (1) as a reasonable exercise of the public right of navigation; and (2) under a grant from plaintiff himself to one Sauntry, defendant's lessor.

The evidence at least tended to prove that the piers and booms constructed and maintained in the river were only such as were reasonably necessary to boom the logs coming down the river, and to assort from the whole mass such as were to be manufactured into lumber at Little Falls. It was also practically conceded that the direct and necessary result of maintaining these piers and booms was, at times, to produce log jams, which so raised the water in the river above its normal or natural height, as to overflow plaintiff's land, which is above ordinary high-water mark. The evidence was also sufficient to justify the jury in finding that the defendant was not guilty of any negligence in either the construction or maintenance of the piers and booms, if it had a right to construct or maintain them at all.

When the evidence closed, the court instructed the jury to find a verdict in favor of the plaintiff for the amount of his damages, "without regard to the question of the defendant's negligence."

If the defendant had no rights other than that of exercising the public right of navigation or of improving the navigation of the river, then the direction of a verdict was correct; for it is very clear that neither the public right of navigation, nor anything in defendant's charter, gave it any right to thus overflow plaintiff's land. That right could only be acquired by grant or by the exercise of the right of eminent domain, and the payment of compensation to the owner of the land. Weaver v. Mississippi & R. R. Boom Co., 28 Minn. 534, 11 N. W. 114; In re Minnetonka Lake Improvement, 56 Minn. 513, 58 N. W. 295; Carlson v. St. Louis River D. & I. Co., 73 Minn. 128, 75 N. W. 1044.

This brings us to defendant's second defense, which involves the construction of the deed from plaintiff and wife, as parties of the first part, to Sauntry, defendant's lessor, as party of the second part. The granting clauses of this deed, which was executed in January, 1891, were as follows:

"The said parties of the first part, for and in consideration of the sum of fifty (50) dollars, do hereby grant, bargain, sell and convey unto the said party of the second part, his heirs, executors, administrators and assigns, forever, all the right, title and interest in and to the use and enjoyment of the Mississippi river, the waters thereof, and the land covered by said waters, whether naturally or by means of any dam erected or maintained by the Little Falls Water-Power Company, its successors or assigns, and for the purpose of booming, holding, handling, rafting and assorting logs, timber and lumber therein or thereon, which the said parties of the first part, or either of them, have, by any reason of them, or either of them, being now the owners in fee simple of all and each of the tract, piece or parcel of land lying and being in the county of Morrison and state of Minnesota, and described as follows, to wit: Lot number one (1) in section number twenty-seven (27), township number forty-one (41), of range number thirty-two (32); hereby granting to said party of the second part, his heirs and assigns, the sole, exclusive and perpetual right to erect, construct and maintain all piers and booms, and to drive and place all posts and piling, that may be necessary and proper for the exercise of the rights and privileges of booming, holding, handling, rafting or assorting logs, lumber and timber, hereinbefore granted; such piers, posts or piling to be placed at such points, either in or upon the soil covered by the waters of the said Mississippi river, as hereinbefore specified, or upon the margin of said waters, as may be deemed necessary or convenient by said party of the second part, his heirs or assigns, for any of the purposes above mentioned.

And there is also hereby granted said party of the second part, his heirs and assigns, the further right to attach any boom or booms, which he or they may hereafter construct for any of the purposes above specified, to the soil upon the lands hereinbefore described, at any point, either under said waters of the Mississippi river or upon the margin thereof.

And there is also hereby granted to the said party of the second part, his heirs and assigns, the right and easement to, at all times whenever it is necessary or convenient for him or them to do so, in the full, free and perfect enjoyment and exercise of any and all the rights and privileges hereby granted, either himself or themselves, or his or their agents, servants, employees, attorneys and

counselors, freely pass and repass, on foot or otherwise, to and fro upon the lands hereinbefore described, keeping as near to the margin of said waters of the Mississippi river as practicable: provided, however, that, in the exercise of the rights of way herein granted, said party of the second part, his heirs and assigns, or his or their agents, servants, employees, attorneys or counselors, shall not disturb or injure said parties of the first part, their heirs or assigns, in the use and enjoyment of the said lands hereinbefore described, except so far as may be necessary for the exercise and enjoyment of the rights and privileges hereinbefore conveyed."

While it is elementary that deeds are to be construed as meaning what the language in them imports, and that extrinsic evidence cannot be adduced to add to, take from, or vary the written words, yet it is equally well settled that the language of a written instrument may be construed in the light of surrounding circumstances, and for that purpose the court should, as far as possible, put itself in the place of the parties at the time of the execution of the instrument, and interpret its language from that standpoint.

The evidence tended to prove that a large number of the citizens of Little Falls and vicinity (including the plaintiff) were desirous of inducing Sauntry and his associates to build or equip at Little Falls one or more mills for the manufacture of pine lumber; that the logs to supply the mill or mills would have to be obtained from and floated down the Mississippi river, above Little Falls; that, as the logs of different owners floated down in a common mass, it would be necessary, in order to secure the requisite logs for the mills, to erect, maintain and operate, at and for a considerable distance above Little Falls, a system of piers, booms and assorting works, sufficient to stop all the logs coming down the river for a sufficient length of time to assort the logs destined for Little Falls from the general mass, and to provide facilities for the passing of the balance of the logs down the river without unreasonable delay.

There was at this time no place or works on the Mississippi river, at or above Little Falls, where logs designed for use at that place could be sorted out of the common mass. These facts were known to all the parties concerned.

Under these circumstances, and as an inducement to Sauntry and his associates to build and equip a mill or mills at Little Falls, the

plaintiff executed to Sauntry the deed in question, and at or about the same time over a dozen riparian owners, whose riparian rights and lands were liable to be affected by the construction of these booms and piers, severally executed to Sauntry deeds granting him the same rights and easements in and upon their respective premises. Thereupon, and as a part of the same transaction, all of these riparian owners, including plaintiff and Sauntry, entered into a written agreement, wherein and whereby, after reciting the execution of these deeds, and that the consideration therefor was the agreement of Sauntry, and his associates or assigns, to build or equip, on or before April 1, 1892, a mill or mills at Little Falls, with an aggregate minimum capacity of 40,000,000 feet during the sawing season, it was agreed that, if Sauntry and his associates or assigns should not perform their part of this agreement, they were to reconvey to the respective grantors in their deeds all rights, privileges, and easements which they had acquired thereunder; otherwise the deeds to remain in full force.

Sauntry and his associates performed their part of the agreement by erecting and equipping the mills as promised, and constructed, maintained and operated the piers, booms and assorting works for the purpose of supplying their mills with logs. They consisted of a line of piers across the Mississippi river about a mile below plaintiff's land. Extending up the river from the line of piers along the channel of the river opposite to, and to the north or upper line of, plaintiff's land, was another and double line of piers to which booms were attached to guide the logs down the river, and keep them within the channel prescribed by such piers and booms, and another set of piers extending across the river opposite the north line of plaintiff's land. Each of the sets of piers extending across the river had attached to them sufficient booms to stop and hold the entire mass of logs coming down the river, and at or near each of these sets of piers the assorting was carried on. In high water and swift current the work was done near the lower set of piers, and in low water, near the upper set of piers. This was all part of one assorting works, and was built and operated for the purpose of assorting logs to be manufactured at Little Falls.

As already stated, the evidence tended to prove that they were

reasonably necessary for that purpose; that they were properly constructed and operated; that, in order to do the assorting, it was necessary temporarily to stop the whole mass of logs; that this necessarily caused "log jams" at every high water, when logs were coming down in large quantities; and that the natural and necessary consequence of these jams was to raise the water in the river above its natural height, resulting in the water flowing out of its natural channel, and submerging more or less the adjacent riparian lands.

There was no claim that the construction and maintenance of these piers and booms constituted an unauthorized obstruction to the public right of navigation, or were in any respect unlawful, unless it was because they resulted in an interference with plaintiff's land not included in the grant from him to Sauntry.

Construing the language of this deed in the light of the extraneous circumstances existing at the time of its execution, it obviously meant to grant such rights and easements in the land of the grantor as would enable the grantee to construct, maintain and operate such a system of piers, booms and assorting works as was necessary in order to assort out of the whole mass of logs floating down the river (often between four hundred million and six hundred million feet) the forty million or more to supply the mills to be built and operated by Sauntry, and his associates or assigns, at Little Falls.

It is undoubtedly true, as plaintiff's counsel suggest, that while a grantee is entitled to everything which, by fair construction, the words of the grant covers, yet he is entitled to nothing beyond that. But it is equally true that, while implied grants are not favored, still a right may be established by an implied as well as by an express grant.

Without stopping to consider whether the rule of strict necessity applied to implied reservations is to its full extent applicable to implied grants, it is a settled maxim of the law that the granting of any particular thing shall be taken to carry with it all which is necessary to the beneficial enjoyment of the thing granted, and which it is in the power of the grantor to convey. This rule is peculiarly applicable in this case.

The grant was not an express one of certain land. Where an implied grant of certain easements in other land is claimed as appurtenant to the land expressly granted, but the principal thing granted itself consists of certain easements in land, the question is as to what was the nature and extent of those easements. The evidence clearly tended to show that the natural and necessary result of exercising the right expressly granted was to a certain extent to flood plaintiff's land, and that the right to do. so was essential to the beneficial use of the rights expressly granted. If so, then such right was included in the express grant by necessary implication.

There is nothing in the point that plaintiff conveyed nothing more than his riparian rights, and that the right of flowage was in no way appurtenant to, or necessary to the enjoyment of, the riparian rights conveyed.

The right conveyed was to construct, maintain and operate a system of. booms, piers and assorting works for the purposes specified in the deed, with all which that necessarily implied. Of course, the right to construct, maintain and operate these works was limited to what was reasonably necessary to effectuate the purpose of the grant. It was incumbent on the defendant to build and operate them so as to do plaintiff's premises no more injury than was necessary to the exercise and enjoyment of the rights and privileges expressly granted. For example, if it was reasonably practicable (consistently with the enjoyment of the rights granted) for the defendant to reduce the injuries to the lands of the grantees in these deeds by so increasing the number of booms as to prevent, in whole or in part, those large log jams which produced the flooding of riparian lands, it would undoubtedly be its duty to do so.

It may be that the evidence was such as to have required the case to be submitted to the jury on that question. Under plaintiff's assignments of error, it has not been. necessary for us to examine the evidence with reference to this point further than to ascertain that it was, at least, not conclusive in favor of the plaintiff.

In conclusion, we remark that Rasicot v. Little Falls Imp. & Nav. Co., 65 Minn. 543, 68 N. W. 212, so much relied on by plaintiff's counsel, is readily distinguishable from the case at bar. Not only

was the language of the grant in that case different, but there was an entire absence of any extraneous circumstances tending to throw light upon the proper construction of the language of the deed,—a fact upon which much stress is laid in the opinion.

Our conclusion being that the trial court erred in directing a verdict for the plaintiff, the order appealed from is reversed, and a new trial granted.