## NEIL CURRIE v. FLOYD SILVERNALE AND ANOTHER.[1]

### April 17, 1919.

### No. 21,215.

**Construction of deed — right of flowage caused by mill dam.**

1. The words "Said dam may maintain the water at a height of seven (7) feet" contained in a deed conveying 2.3 acres upon which was a mill dam, did not create an easement giving the grantees the use of a swale some seven hundred (700) feet above the premises conveyed for a permanent spillway.

**Same — right of way over grantor's land.**

2. Nor did the deed by implication grant a right of way over the grantor's land above the tract conveyed to repair the erosion in the sod of the swale where the waters in times of flood enter from the stream and threaten to cut a new channel.

**Trespass unjustifiable.**

3. Even if defendants' first entry upon plaintiff's land might be held justifiable because of an unexpected emergency threatening destruction of private property, subsequent repeated entries when the threatened destruction could not be said to arise from unexpected emergencies must be held wrongful.

**Judgment — findings and evidence require permanent injunction.**

4. The findings and the undisputed evidence relative to certain challenged findings and requested findings require a judgment for nominal damages and a permanent injunction against further trespass upon plaintiff's land by defendants.

Action in the district court for Murray county to recover $5,000 for trespass and for an injunction to prevent further trespass in erecting or maintaining the dam mentioned in the opinion. The answer set up substantially the facts stated in the fourth paragraph of the opinion. The

[1]Reported in 171 N. W. 782.

case was tried before Nelson, J., who made findings and ordered judgment in favor of defendants dismissing the action. From an order denying his motion to amend the findings and for judgment in his favor or for a new trial, plaintiff appealed. Reversed with directions.

*M. C. O'Donnell,* for appellant.

*M. J. Harrington,* for respondents.

HOLT, J.

The action seeks damages for trespass and an injunction against future acts of trespass upon plaintiff's land. The decision was in favor of defendants. Plaintiff moved to amend the findings and order for judgment and for a new trial. The appeal is from the order denying the motion in toto.

The outlet of Lake Shetek is Des Moines river. A short distance from the lake and immediately below where Beaver creek joins the river a mill dam has existed since 1873. The mill is about a mile further down the stream. The dam is located on the northwest quarter of the northwest quarter of section seventeen (17), township one hundred and seven (107), range forty (40), Murray county.

In 1882 plaintiff, being the owner of this forty, conveyed to the grantors of defendant Floyd Silvernale 2.3 acres thereof which takes in the land upon which the dam is built. In the deed plaintiff granted, bargained, sold, released and confirmed "to the grantees all damages and right of flowage done or caused by the erection of a certain dam across the Des Moines river at or near the outlet of Lake Shetek in said county to the northeast quarter of section 18, township 107, range 40, and to government lot four (4), section 18, township 108, range 40. Said dam may maintain the water to height of seven (7) feet." Some time after selling the dam site and the mill plaintiff sold and conveyed the balance of the 40-acre tract first described, but in July, 1914, he again became the owner in fee thereof. In 1882 defendant Floyd Silvernale's grantors, then owners of the mill, instituted condemnation proceedings to obtain flowage rights above the dam, but no land in section 17 was included therein, nor does the evidence show that those parties then owned any part of the forty in question other than the 2.3 acres.

About 700 feet above the dam, and upon this 40-acre tract of plain-

tiff, there is a swale or depression in the bank of the river diverging from the course of the stream but again leading into it below the mill. Even before the dam was built water passed over and along this swale during extraordinary floods and since the dam has existed water flows therein during extensive freshets. The water did not seem to cut the sod in the swale until 1905. Then, as plaintiff claims, an overflow occurred of such volume and power as to dig a channel through plaintiff's land, which every recurrence of high water deepens and widens, so that many acres have been destroyed. Defendants claim that this swale is of a marshy character, and that, when cattle were turned in by the owner, the sod became so broken up that the overflow from the heavy flood of 1905 readily cut a channel through and caused the injury. The cut then made was the beginning of a new channel for the river, and unless immediately blocked no water would have flowed into the mill pond and the usefulness of the dam would have been destroyed completely. Defendants thereupon entered plaintiff's land and at or near the head of this natural spillway constructed an embankment, dumping in rocks and dirt, so as to bring the surface up to about its former level, which level seems to be so low that, when the flash boards at the dam are set so as to maintain the full height of seven (7) feet and there is high water, a considerable volume passes out over the swale or spillway mentioned, and such waters continually widen and deepen the new channel below running through plaintiff's land, and it also works around and through the said embankment. This diversion of a large torrent into this natural spillway in times of high water is, in a measure, due to the narrowness of the spillway or flume at the dam.

Since 1905 defendants have frequently entered plaintiff's land with teams and men to haul and dump in rock and other substance at the embankment mentioned as the overflow cuts new channels in or around the same, or as it settles. Such entry has been over plaintiff's protest. Floyd Silvernale testified that he intended, whenever in the future the embankment became insufficient or in need of repairs, to enter plaintiff's land and do whatever became necessary to maintain this natural spillway so that the efficiency of the dam would not become impaired.

The finding that: "Thereafter and prior to April 7th, 1882, the plaintiff was the sole owner of said mill and dam and had instituted

condemnation proceedings and had acquired the right to maintain the said upper dam at a height of seven feet," is challenged as not sustained by the evidence. There is no evidence that plaintiff instituted condemnation proceedings. Indeed, respondent in his brief concedes that the proceedings were taken after plaintiff had conveyed the 2.3 acres mentioned, which proceedings, however, did not purport to acquire flowage or any other rights in the land upon which the trespass is alleged. This finding is perhaps of no great importance, unless it is sought to charge plaintiff with any greater burden than was assumed in the grant and release above set out and contained in his deed to the 2.3 acres to defendant Floyd Silvernale's grantors. We think the condemnation proceeding, in view of the stipulation that it did not include the land in question, should have no bearing on the decision herein.

The proposition, therefore, upon which the case must turn, is whether the deed referred to conveying the mill and the small tract of 2.3 acres upon which the dam is situated gave the grantees and their successors the perpetual right to enter any land then owned by the grantor adjoining the stream above the dam and do whatever was necessary to prevent the stream from cutting a new channel that would destroy the usefulness of the water power held by the dam. It will be noticed that the deed refers to no flowage rights upon lands other than in section eighteen (18). Do the words: "Said dam may maintain the water to a height of 7 feet" grant a right to use a swale, in section seventeen (17), seven hundred (700) feet above the dam as a spillway through which destructive torrents may be discharged? And, further, may this language be construed into a grant of an easement over any land bordering the stream and owned by the grantor for the purpose of maintaining this spillway so that it may not destroy the usefulness of the dam? We think both questions must be answered in the negative. The deed contains a special covenant with respect to flowage upon specified lands other than the tract here involved. This negatives any implied grant of rights as to the latter. The plain inference is that the dam as maintained and operated at what was then understood to be "7 feet" did not overflow into this swale to any appreciable extent, and neither grantor nor grantees anticipated the conditions that have since developed. There is nothing in the deed, nor in the situation as it existed at the time it was given, indicating

that this swale was considered a necessary appurtenance or appendage of the dam to be used as a spillway. But, for the sake of illustration, granting that it could have been so understood, there is nothing in the deed obligating plaintiff to keep it in repair, and we apprehend defendants entertain no thought that he assumed such burden. If, then, the duty devolved upon defendants to see that the spillway was kept in its original state, they would not discharge that duty by simply building an embankment near the river bank, letting the water that overflows the embankment, throughout the rest of its course to rejoin the river, tear deep channels upon plaintiff's land, but must see to it that the swale was maintained in its original condition its entire distance. A construction of the deed so as to give the rights contended for leads to absurdities, and we think the instrument does not in terms or by implication create an easement over this natural depression in plaintiff's land for a spillway to the dam situated some 700 feet below.

The thought cannot be entertained for a moment that in the sale and purchase of the mill property the parties considered this swale as a necessary appurtenance to be used in connection with the operation of the dam. It was only during heavy floods that the waters overflowed the banks of the stream at that place, and such occasional overflows had not affected the sod to any appreciable extent until more than 20 years after the conveyance.

An unauthorized entry upon lands of another to save private property may be justified in an emergency; but, as a rule, even in such a case the law awards compensation for the actual injury to the lands. It may well be that, when it first appeared that by the unexpected opening of a new channel the destruction of the water power was threatened, defendants would have been justified in entering plaintiff's land to block such channel. By effectively blocking the same, defendants would not only have saved the mill power, but the erosion of which plaintiff complains would have been averted to a large extent. However, the unexpected emergency justifying the first entry cannot well be set up as an excuse for the subsequent repeated entries to make repairs. Defendants, with the knowledge of the danger and effect of the overflow, could not be permitted to call the subsequent overflows with their attendant injuries unexpected emergencies. We think their repeated entries of late years

must be regarded as trespass or a wrongful invasion of plaintiff's premises.

This wrongful invasion of property rights entitled plaintiff at least to nominal damages. He contends that the evidence calls for a finding of substantial damages. We cannot say upon this record that the court was required to find such in any specific sum. The evidence was not definite or satisfactory. The injury done during the two years plaintiff was owner could not well be separated from that done before.

But we are of the opinion that upon this record plaintiff was entitled to a judgment for nominal damages and an injunction forbidding further trespass upon his land. Defendants argue, and cite authorities, to the effect that the refusal to grant an injunction is largely discretionary with the trial court. The cases cited involved temporary injunctions only, where unquestionably the rule invoked is applicable. Myers v. Duluth Transfer Ry. Co. 53 Minn. 335, 55 N. W. 140; Watters v. City of Mankato, 106 Minn. 161, 118 N. W. 358; Minneapolis Gaslight Co. v. City of Minneapolis, 123 Minn. 231, 143 N. W. 728. After trial, when the facts found or the facts conclusively established, clearly call for injunctive relief, the court has no discretion to withhold it. In this case the use of this swale for a spillway is clearly and conclusively shown to erode, deepen, and widen the channel that began to develop in 1905, and is a substantial injury to the land. It equally as clearly appears that the entries upon plaintiff's land since said year, and which defendants purpose to continue in order to maintain the embankment they then constructed, are wrongful invasions of plaintiff's possession. For continuing invasions of that sort an injunction may be had irrespective of the nominal character of the injury done or threatened. Whittaker v. Stangvick, 100 Minn. 386, 111 N. W. 295, 10 L.R.A.(N.S.) 921, 117 Am. St. 703, 10 Ann. Cas. 528.

We find nothing in Aubol v. Grand Forks Lumber Co. 131 Minn. 186, 154 N. W. 968, or Johnk v. U. P. Ry. Co. 99 Neb. 763, 157 N. W. 918, L.R.A. 1916F, 403, cited by defendants, bearing upon the proposition before us. Gravel v. Little Falls Imp. & Nav. Co. 74 Minn. 416, 77 N. W. 217, also cited, was a case where a right of way or easement to maintain the improvements was specifically granted. Vincent v. Lake Erie Trans. Co. 109 Minn. 456, 124 N. W. 221, 27 L.R.A.(N.S.) 312, seems

to be authority for the proposition that, even where the emergency may justify the invasion of another's rights of property, if injury results to the property, compensation must be made.

The order is reversed and the case is remanded with direction to amend the findings and order for judgment so as to award plaintiff nominal damages and a permanent injunction against further trespass upon plaintiff's lands until rights therein are lawfully acquired by condemnation or contract.