JAMES WEAVER vs. MISSISSIPPI & RUM RIVER BOOM COMPANY.
(1st Case.)

December 24, 1881.

**Constitution—Taking of Property for Public Use—Trespass by Boom Company.**—The defendant, by the construction and maintenance of its boom across the Mississippi river, invaded the land of plaintiff—a riparian owner—by superinduced additions of water, earth, logs and other material, so as to effectually destroy or impair its usefulness. *Held*, 1. That this was not a mere consequential injury, but amounted to a *taking* of the property within the meaning of article 1, § 13, of the constitution of the state; that defendant had no right to thus use or take plaintiff's property without his consent, without first paying compensation therefor.

**Same—Action by Land-Owner—Defences.**—2. That, not having paid plaintiff compensation, the fact that defendant had constructed and maintained its boom with proper care and skill, and in the manner prescribed by its charter, would be no defence to an action by the land-owner for the injury to his property.

**Trespass—Evidence—Damages.**—The evidence tended to show that the trespass of defendant deprived plaintiff of the use of his property for a certain period of time; hence, the value of such use became material in

determining the amount of damage which plaintiff had sustained. *Held*, that it was competent to show what defendant had agreed to pay plaintiff for the use of the same property for a term immediately preceding the trespass, the same being in the nature of an admission as to value, although subject to explanation.

Plaintiff, as the owner of certain land bordering on the Mississippi river, brought this action in the district court for Hennepin county, to recover damages of defendant for its wrongful acts, (1) in unlawfully taking and carrying away from such land a large quantity of stone; (2) in constructinig and maintaining in the Mississippi river, and upon land of the plaintiff, stone piers, whereby a large part of the main body of the river has been diverted from its natural channel, and turned over and upon plaintiff's land, greatly damaging the same, by overflowing it and depositing upon it large quantities of sand, mud and other material, destroying thereby its agricultural value, and by washing out and tearing away large portions of the bank; and (3) in unlawfully entering upon and occupying, and continuing so to occupy, such land of plaintiff, with several million feet of logs and other material. Plaintiff also asked that defendant be enjoined from any further use of, or interference with, his land.

The answer alleges the incorporation of defendant under various acts of the legislature, (Laws 1857, Ex. Sess. c. 60; Sp. Laws, 1862, c. 86; Sp. Laws 1867, c. 134; Sp. Laws 1868, c. 120; Sp. Laws 1877, c. 175;) admits plaintiff's ownership of the land in question, denies the taking of any stone therefrom, and denies the construction and maintenance of any such piers as are complained of, or any piers causing damage to plaintiff's land. The answer further alleges that for more than fifteen years, the defendant, in performance of its duties under the acts of the legislature, has constructed and maintained booms for logs in the Mississippi river, between the mouth of Crow river and the head of Nicollet Island, including the boom which is opposite the lands of plaintiff, and which is constructed in connection with several islands, owned by defendant, situate in the channel, and is extended to the shore opposite to, and to a point about a half of a mile below, plaintiff's lands; that all piers constructed by defendant near or opposite plaintiff's lands are below

low-water mark and connected with this boom; that during the said fifteen years, defendant has yearly cared for, managed, run and navigated, within its boom limits, many millions of feet of logs owned by various owners, and that, to preserve such logs from the ordinary perils of such navigation, and from the danger of being swept and carried away by floods and freshets, requires a large number of safe and secure harbors for logs; and that the boom opposite plaintiff's lands is one of the principal of such harbors, has been so maintained and used by defendant for more than fifteen years, and, if defendant should cease to so maintain and use such boom, the safety of such logs would be greatly endangered, and the interests of all persons owning and navigating logs in said river will be greatly jeopardized. The answer also denies possession of, or entry upon, plaintiff's lands, and sets up a lease of the same from plaintiff, which expired at the time of the alleged entry.

The case was tried by *Vanderburgh*, J., and a jury, who found, upon the special issues submitted to them by the court, (1) that defendant took and carried away stone of the value of $75; (2) that defendant has unlawfully entered upon and occupied, and continued to occupy, the lands of plaintiff, to his damage, $500; and (3) that "a portion of the water in the main body of the Mississippi river" has "been turned over and upon the lands of said plaintiff, * * * by reason of the erection and construction" of a "dam by said defendant upon said lands, or in the Missisippi river opposite said lands," to plaintiff's damage, $70. Judgment was ordered for plaintiff, in accordance with these findings, and "enjoining the said defendant from further occupying, trespassing upon or interfering with said plaintiff's land through the operation and maintenance of the boom in question." A new trial was refused, and the defendant appealed.

*Lochren, McNair & Gilfillan*, for appellant.

Defendant may use the river below low-water mark for boom purposes, and its right to so use it is absolute against the land-owner, who has no remedy for injury by such use, where proper care is taken. It is *damnum absque injuria.* *Railroad Co.* v. *Schurmeir*, 7 Wall. 272; *Schurmeier* v. *St. Paul & Pacific R. Co.*, 10 Minn. 59, (82;) *Rippe* v. *Chicago, D. & M. R. Co.*, 23 Minn. 18; *Brisbine* v.

*St. Paul & S. C. R. Co.*, 23 Minn. 114; *Pollard* v. *Hagan*, 3 How. 212; *County of St. Clair* v. *Livingston*, 23 Wall. 46; *Barney* v. *Keokuk*, 94 U. S. 324; *Pound* v. *Turck*, 95 U. S. 459. If a party in the exercise of a legal right, more especially one conferred by express statute, does an injury to another's property, he is not liable for damages, unless they were caused by his want of the care and skill ordinarily exercised in like cases. 1 Hilliard on Torts, 112; *Radcliff's Ex'rs* v. *Mayor*, 4 N. Y. 195; *Fahn* v. *Reichart*, 8 Wis. 255; *Goszler* v. *Corporation of Georgetown*, 6 Wheat. 593; *Smith* v. *Corporation of Washington*, 20 How. 135; *Sprague* v. *City of Worcester*, 13 Gray, 193; Dillon on Mun. Corp. §§ 783, 798; *Alexander* v. *City of Milwaukee*, 16 Wis. 247; 1 Wait's Act. & Def. 146; 2 Id. 115. The order for judgment, therefore, is too broad. At most the defendant should only be enjoined from direct trespass on plaintiff's land, and not from any interference with his land which may result from the maintenance and use of the booms.

*Rea, Wooley & Kitchel*, for respondent.

MITCHELL, J.*  No principle is more fully implanted in American constitutional law than that private property shall not be taken for public use without compensation; and, in view of the fact that the government is granting so much of its prerogative franchise to private or *quasi* public corporations, in theory for public purposes, but often practically in part for private benefit, the exercise of which involves injury to, or the taking of, private property, there is no constitutional guaranty that requires to be more jealously guarded against encroachment than the one referred to.

The state itself cannot take private property for a public use without making compensation therefor, and consequently cannot grant such power to any one else. It cannot do so under the plea of improving the navigation of a public river any more than any other public purpose. Riparian owners upon a public watercourse did not acquire and do not hold their property burdened by any such reservation or implied right on the part of the state. Undoubtedly, like every other person, they hold their property subject to the right of

---

* Clark, J., having been of counsel, took no part in the decision of this case.

the state to take it by paying for it whenever it becomes necessary for a public purpose; and it must rest in the wisdom of the legislature to determine when such necessity exists. The improvement of the navigation of a public river is a public purpose. The floating or rafting of logs upon a public stream is a legitimate use of it as a highway, and the taking of property bordering upon the Mississippi river for boom purposes, in order to improve and utilize the river for that purpose, may be a taking for public use. This court so held in *Cotton* v. *Miss. & Rum River Boom Co.*, 22 Minn. 372.

But private property cannot be taken without compensation for that purpose any more than for any other. The state has not the right, without making compensation, to take or destroy the property of riparian owners in making a watercourse navigable when it is not so by nature, or in appropriating such watercourse to the public use by artificial erections or improvements. Angell on Watercourses, § 541. We are aware of a class of cases to be found in New York, Pennsylvania, and elsewhere, in which it has been held there can be no recovery of damages on account of certain injuries sustained by the proprietors of lands bordering on navigable rivers in consequence of acts done by the public for the improvement of navigation. These cases, if sustainable, will be found to be so upon the principle that the bed of the stream, with all the water passing in it, is strictly public property, to be used by the public within the banks and below high-water mark, just as the interest and necessities of navigation may dictate or require, and that within those limits the public may, for this purpose, do as it pleases with the water, without being required to answer to contiguous proprietors for consequential damages. And we think that, upon an examination of the facts, it will be found that in all these cases the acts done by the public were thus confined to the bed of the stream, and below high-water mark. But we find no case where the public was held to have the right to overflow, or otherwise take or use, private property, or property outside of the bed of the stream, for any such purpose, without making compensation therefor.

But it is urged that the plaintiff's property has not been *taken;* that defendant has only used the river within low-water mark,—the

right to use which is absolute as against the land-owner,—and hence, if his property is injured, it is merely a remote or consequential damage, for which he has no remedy, it being *damnum absque injuria*. This involves a consideration of the question, what constitutes a *taking* of private property within the meaning of the constitution? We are aware that there are numerous cases in which the doctrine has been successfully invoked that for a consequential injury to private property arising from the prosecution of public improvements for the public good—notably the grading of streets—there is no redress. The principle, if properly applied, is a sound one. But many decisions have, in our opinion, gone to the uttermost limit of sound judicial construction in favor of this principle, and in some cases beyond it; as, for example, a few which hold that nothing constitutes a taking which does not amount to an actual assumption of the possession. But, as has been well said by the supreme court of the United States, *(Pumpelly* v. *Green Bay Co.,* 13 Wall. 166, 177,) "it would be a very curious and unsatisfactory result, if, in construing a provision of constitutional law always understood to have been adopted for protection and security to the rights of the individual as against the government, and which has received the commendation of jurists, statesmen and commentators, as placing the just principles of the common law on that subject beyond the power of ordinary legislation to change or control them, it shall be held that if the government refrains from the absolute conversion of real property to the uses of the public, it can destroy its value entirely, can inflict irreparable and permanent injury to any extent, can, in effect, subject it to total destruction, without making any compensation, because, in the narrowest sense of that word, it is not *taken* for the public use." Such a construction would be a perversion of the constitutional provision into an authority to the government for the invasion of private property, instead of a protection to the citizen. But there are abundant authorities to sustain the doctrine that a serious interruption to the common and necessary use of property may be equivalent to the taking of it, and that under the constitutional provision referred to, it is not necessary that the property should be absolutely taken, and

the possession directly assumed. Angell, in his work on Watercourses, (section 465a,) substantially states this as the law.

It has been again and again decided to be the doctrine that overflowing land by backing water on it from dams built below constitutes a *taking*, within the meaning of the constitution, and that when real estate is actually invaded by superinduced additions of water, earth, sand, or other material, so as to effectually destroy or impair its usefulness, it is a taking within the meaning of the constitution. The following authorities, among many others which might be cited, abundantly sustain these propositions, which, we think, are in harmony with the weight of judicial authority as well as with sound principle. *Canal Com'rs* v. *People,* 5 Wend. 423; *People* v. *Canal Appraisers,* 13 Wend. 355, (reversed in 17 Wend. 571, but on another ground;) *Gardner* v. *Village of Newburgh,* 2 John. Ch. 162; *Hooker* v. *New Haven & North Hampton Co.,* 14 Conn. 146; *Same* v. *Same,* 15 Conn. 312; *Denslow* v. *Same,* 16 Conn. 98; *Sinnickson* v. *Johnson,* 17 N. J. Law, 129; *Pettigrew* v. *Village of Evansville,* 25 Wis. 223; *Arimond* v. *Green Bay & M. Canal Co.,* 31 Wis. 316; *Pumpelly* v. *Green Bay Co.,* 13 Wall. 166.

The evidence in this case tends to show that the effect of building this boom was to cause the logs to collect in it, and thereby raise the water in the river, and turn it over and upon the lands of the plaintiff, and carry with it in high water large quantities of logs and drift, which, when the water subsided, were left stranded upon these lands, so as to effectually destroy or impair their usefulness. The evidence on this point, we think, fully sustains the fourth special finding of the jury. These acts, if allowed to continue, would constitute a taking of the property, and not a mere consequential injury, and, defendant not having acquired the right to thus take or appropriate the property by payment of compensation in the manner provided by its charter, the plaintiff could maintain an action for his damages.

The defendant invokes the doctrine that, "if a party in the exercise of a legal right, more especially one conferred by statute, does an injury to another's property, he is not liable for damages, unless they were caused by his want of the care and skill ordinarily exercised in like cases." (1 Hilliard on Torts, 112.) Properly understood and

applied, this is unquestionably the law.  But what we have already said shows why this rule does not apply to the facts of this case so as to protect the defendant.  The trouble is that the defendant was not exercising a legal right.  Notwithstanding its charter, it could not lawfully exercise the power to build this boom so as to take the property of plaintiff, until it had first paid compensation for the same.

It is urged that the direction or order for an injunction is too broad, and, if an injunction were to issue in accordance with it, it would restrain the defendant from doing acts which it would in any event have a right to do.  If this were so, this direction is a mere order for judgment, and is not appealable.  The order or direction is perhaps indefinite, and not sufficiently certain as to what the terms of the injunction shall be.  But the only course to be taken in such a case, at least before judgment, is to apply to the court to make its order more definite, or to have it settle and make definite the terms of the decree or judgment before it is entered.

There is but one other point to which we deem it necessary to refer. The court, against the objection and exception of defendant, allowed to be introduced in evidence a lease executed by defendant, in which it had agreed to pay to plaintiff a certain sum per annum for the use of these same premises for a term immediately preceding the alleged trespass.  We think that, under the facts of the case, the court was right.  The complaint alleged, and the evidence tended to show, that the trespass of defendant deprived plaintiff of the use and occupation of the premises for a certain time.  Hence the reasonable value of such use was material in determining the amount of damage which plaintiff had sustained.  What defendant itself had agreed to pay for it was in the nature of an admission as to its value, subject, of course, to be explained or rebutted.

Order affirmed.