WILLIAM HUESTON v. MISSISSIPPI & RUM RIVER BOOM COMPANY.

76   251
78   401

May 17, 1899.

Nos. 11,502—(55).

**Trespass—Vendee in Possession Entitled to the Damages.**

A vendee in possession of land under an executory contract of sale, being the equitable owner of the premises (the vendor holding the legal title merely as security for the unpaid purchase money), is entitled to recover the whole of the damages to the land resulting from a trespass thereon.

**Boom Company's Works—Overflow on Two Occasions—Pleading One Cause of Action.**

Certain works erected and maintained by the defendant in the Mississippi river caused a log jam, first in April and again in July, which in each instance raised the water of the river so as to overflow and damage plaintiff's premises. *Held*, that this was in the nature of a continuing trespass by the same act, although resulting in damage on two different occasions, and might be pleaded as a single cause of action.

**Measure of Damages—Evidence.**

In an action for such a trespass, while the measure of plaintiff's damages is the difference between the value of the premises immediately before and immediately after the infliction of the injury, it is competent to introduce evidence of this ultimate fact, and also particular evidence of the nature and amount of the different items of damage which go to make up the whole.

**Closing Mill—Loss of Profits Question for Jury.**

The overflows referred to compelled the plaintiff to shut down a mill which he was operating on the premises. The evidence considered, and *held*, that it made a case for the jury on the question of the loss of profits while the mill was shut down.

**Negligence—Taking Private Property without Compensation.**

The ground of defendant's liability was not that it was negligent in the construction or operation of its works, but that it had no right to thus injure or "take" the plaintiff's property without first acquiring the right by purchase or condemnation.

Action in the district court for Anoka county to recover $2,100 damages for overflowing plaintiff's land. The case was tried before

Tarbox, J., and a jury, which rendered a verdict in favor of plaintiff for $676.54; and from a judgment entered in pursuance of the verdict, defendant appealed. Affirmed.

*John B. Atwater*, for appellant.

The measure of damages for injury to the meadow land was the difference between its value before and after the injury. Ward v. Chicago, M. & St. P. Ry. Co., 61 Minn. 449. It was improper to allow testimony as to the value of the use of the land during the season of 1897, or as to the ultimate value of the crop then growing. See Sparrow v. Pond, 49 Minn. 412. The correct measure of damage for injury to the mill was the difference in value of the items of machinery injured before and after the injury, and the cost of repairing the foundations and tail-race. Benjamin v. Hillard, 23 How. 149. It was improper, after witnesses had testified under this rule, to permit them to testify to the difference in value of the entire property before and after. Damages were erroneously assessed as to two separate trespasses under a complaint which set up only one cause of action. The evidence on the question of plaintiff's loss of profits was improper, since he kept no books of account. Evidence of loss of profits must be definite and certain. Goebel v. Hough, 26 Minn. 252; Simmer v. City of St. Paul, 23 Minn. 408. Evidence as to orders for work was inadmissible. Williams v. Wood, 55 Minn. 323; Cushing v. Seymour, Sabin & Co., 30 Minn. 301. Plaintiff having failed to show negligence was not entitled to recover. Coyne v. Mississippi & R. R. Boom Co., 72 Minn. 533. Plaintiff as vendee under an executory contract was not entitled to recover damages for injury to the meadow. The right of action, if any, was in the vendor. 3 Sutherland, Dam. § 865; Tabor v. Robinson, 36 Barb. 483; Jones v. Taylor, 1 Dev. (N. C.) 434.

*William P. Roberts*, for respondent.

Possession is all that is necessary to entitle one to recover against a wrongdoer for injury to property, title being presumed from the possession. Todd v. Jackson, 26 N. J. L. 525; Reed v. Price, 30 Mo. 442; Illinois v. Cobb, 94 Ill. 55; Honsee v. Hammond, 39 Barb. 89; Carner v. Chicago, St. P., M. & O. Ry. Co., 43 Minn. 375,

377. Any evidence and any fact which legitimately bears on the value of the property is to be considered. King v. Minneapolis U. Ry. Co., 32 Minn. 224. Damages for loss of profits may be recovered. Goebel v. Hough, 26 Minn. 252, 256. The injury was to a regular and well-established business for a definite time. Evidence of the orders which plaintiff had on hand was proper. Cargill v. Thompson, 57 Minn. 534, 547. Claims for damages to the same property by the same means and the same party need not be separated. Though defendant had the right under its charter to drive piles, erect piers, and swing booms, it could not do this, so as to take private property, without compensation. Weaver v. Mississippi & R. R. Boom Co., 28 Minn. 534; McKenzie v. Mississippi & R. R. Boom Co., 29 Minn. 288.

MITCHELL, J.

In 1897 the plaintiff, as vendee under an executory contract of sale, was in possession of a tract of land in Anoka county bordering on the Mississippi river, a tributary of which, called "Rice Creek," ran through the land. On this creek there was a mill for grinding flour and feed, operated by water power furnished by the creek. The mill had been operated by the plaintiff for some years, and had an established line of custom. About six acres of plaintiff's land near the river were used and were especially adapted for pasturage. The balance of the land was used in connection with the mill and the dam. About five-eighths of a mile below plaintiff's land there was an island in the Mississippi river, about half a mile long. Prior to 1897 the defendant built a boom from this island to the east bank of the river, and had established there its assorting gap for the purpose of distributing logs to the mills in Minneapolis. The defendant had also put in a line of piling from the upper end of the island to the west bank of the river, for the purpose of running logs into the boom.

As a result of the erection and maintenance of these works, about April 1, 1897, a large log jam was formed, which caused the water to overflow plaintiff's land, and come up into his mill, so as to injure it, and prevent him from operating it for some nine days. About July 1, another jam occurred from the same cause, which

again flooded plaintiff's land and mill, resulting in further damage to, and loss of the use of, the mill, and destroying and killing the grass on the pasture land to such an extent that it would require one or two years to restore it. Another consequence of this overflow was that when it receded it left sand and other debris on the pasture land. There is really no controversy but that the construction and maintenance of defendant's works caused these overflows, and the consequent damage to plaintiff's premises. There was also ample evidence that this was not the result of some extraordinary and unusual cause, which could not have been reasonably anticipated, but that it was a thing which, in view of the past history of the river, might be reasonably expected to occur at intervals, more or less frequent, as the result of maintaining these structures. It is settled by the repeated decisions of this court that defendant's charter gave it no authority to maintain these structures in the river so as thus to injure the lands of riparian owners, without acquiring the right to do so by voluntary purchase, or by the exercise of the right of eminent domain, and the payment of compensation. Weaver v. Mississippi & R. R. Boom Co., 28 Minn. 534, 11 N. W. 114.

This action was brought to recover damages to plaintiff's premises, the items of which consisted of the damages to the mill, the loss of the use of it while shut down by the overflows, the injury to the pasture by destroying the grass and the deposit of sand and debris upon the land.

1. The first point made by defendant is that the plaintiff, as vendee under an executory contract of sale, was not entitled to recover damages for the injury done to his pasture land; that the right of action for such damages was in his vendor. We see no distinction in that regard between damages to the pasture and damages to the mill. But there is nothing in the point as to either.

The plaintiff was rightfully in possession under his contract, the terms and conditions of which he had kept and performed up to that date. He was the equitable owner of the land, and the vendor held the legal title merely as security for the deferred payments of the purchase money. Upon full performance of his contract, plaintiff was entitled to the conveyance of the property. The general rule is that damages in an action for trespass upon real property

may be such as are appropriate to the tenure by which the plaintiff holds. Possession alone will entitle him to recover damages for any injury solely affecting it. If he seeks to recover for the future, he must show that his title gives him an interest in the damages claimed, and he can recover none except such as affect his own right, unless he holds in such relation to other parties interested that his recovery will bar their claim. 3 Sutherland, Dam. (2d Ed.) § 1012. In this case the injury is wholly to plaintiff. He will have to pay to his vendor the full contract price, notwithstanding that the premises may have been depreciated in value by the trespass. The vendor is certainly not entitled to the full purchase price and the damages also. Indeed, we fail to see how the vendor could, under the circumstances, maintain any action at all for damages. Whether he could, in equity, impound the damages recovered in this action if the injury to the premises was so great as to leave them inadequate security for the unpaid instalments of purchase money, it is unnecessary now to inquire. We hold that the plaintiff is entitled to recover the whole damage to the premises.

2. The complaint alleged generally the unlawful construction and maintenance of defendant's works, and the consequent injury to plaintiff's premises in 1897; and upon the trial he was permitted, against the objection of the defendant, to introduce evidence of the overflow and consequent damage, both in April and in July. There is nothing in the point that there were two separate and distinct causes of action, which ought to have been pleaded as such. It was in the nature of a continuing trespass by the same act, although resulting in actual damage on two different occasions.

3. In its last analysis the measure of plaintiff's damages was the difference between the value of the premises immediately before and immediately after the infliction of the injury. Upon the trial, evidence was introduced of this ultimate fact, and also as to the nature and amount of the particular items of damage; as, for example, the nature and extent of the injury to the mill machinery by the mud and water, the value of the use of the mill during the time it was shut down, the injury to the wall of the tail-race, and what it would cost to repair or restore the same, the extent and duration

of the injury to the pasture land, and what the pasture in its former condition was reasonably worth.

It is urged that this was admitting evidence under two different and separate methods or rules for the assessment of damages; that the plaintiff should have been compelled to adopt one or the other. On the contrary, we think the evidence was all admissible as tending to prove the same thing, viz. the damages to the premises by reason of the trespass. It is the most common thing in the world, in the trial of actions of this and analogous classes, to ask a witness how much less, in his opinion, the premises were worth after the injury than they were before, and then to particularize by introducing evidence as to the nature and extent of the different items which go to make up this estimated total diminution of value; and we never before heard this method of proving damages objected to. An examination of the record satisfies us that this was all that was done in this case.

4. The particular objection urged against the evidence as to the loss of profits of the operation of the mill during the time it was shut down is, as we understand counsel, not that this would not be a proper item of damage in a proper case supported by sufficient evidence, but that in this case the evidence on that point was too indefinite and uncertain to justify a recovery, and particularly as plaintiff kept no books of account. The testimony tended to show that the plaintiff had a regular and well-established business, with a certain amount of custom. He testified as to the amount of business generally done at the mill, and the usual or average profits on the business done. The fact that he kept no books of account to verify his statements went to the credibility of his testimony, and the weight to be given to it, which were questions for the jury.

5. Defendant also claims that, the plaintiff having failed to prove any negligence on its part in either the construction or maintenance of its works, the court should have directed a verdict in its favor as requested. This contention is based on a misapprehension of the ground of the defendant's liability. Conceding that the works were just such as its charter authorized it to construct, that they were properly and carefully constructed and managed, and that defendant did nothing that was not reasonably necessary to the

proper and advantageous operation of its business, still defendant had no legal right to do this so as to overflow and damage plaintiff's premises without first acquiring the right by purchase or condemnation and the payment of compensation. It is also urged that in the admission of evidence as to the value of the pasturage destroyed the court disregarded the rule laid down in Ward v. Chicago, M. & St. P. Ry. Co., 61 Minn. 449, 63 N. W. 1104, that the damages must be estimated as of the date of the injury; but the record does not disclose any reversible error on that ground.

Judgment affirmed.