JOSEPH MANDERY v. MISSISSIPPI & RUM RIVER BOOM COMPANY.[1]

June 26, 1908.

Nos. 15,623—(140).

**Care in Driving Logs.**

A corporation organized for the purpose of driving, floating, and conveying logs on navigable streams is required to exercise ordinary care to prevent the same from doing damage to the property of riparian owners. Such duty demands the exercise of ordinary care to prevent logs, delivered into streams by owners, from lodging and creating jams and obstructions in the stream, and thus forcing the waters out of their natural course to the injury of riparian property. It does not conclusively appear from the evidence in this case that appellant company could not, by the exercise of ordinary care, have prevented its logs from creating a jam and causing the injury complained of.

**Evidence of Damages.**

Upon the question of damages a properly qualified witness may state how much less, in his opinion, the premises were worth after the injury than before.

Action in the district court for Morrison county to recover $700 for damages to plaintiff's land caused by the deposit of logs, bark and débris upon it in the spring of 1907 in consequence of defendant's negligence in permitting a log jam to remain in the Mississippi river during the winter. The case was tried before Taylor, J., and a jury which returned a verdict in favor of plaintiff for $150, and answered in the affirmative this question: "Was defendant negligent in leaving

[1] Reported in 116 N. W. 1027.

the logs in the river near plaintiff's premises in the winter of 1906–1907?" From an order denying defendant's alternative motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*Arthur P. Blanchard* and *Cohen, Atwater & Shaw,* for appellant.

The Mississippi river is a navigable stream and the public, as well as defendant under its charter, has a right to use it as a highway for the floating or driving of logs, and the rights of the riparian owner are subordinate to this use. Coyne v. Mississippi & R. R. Boom Co., 72 Minn. 533. See also Doucette v. Little Falls Imp. & Nav. Co., 71 Minn. 206; Field v. Apple River, 67 Wis. 569; White River v. Nelson, 45 Mich. 578.

The owners of these logs had the right to put them in the river and allow them to float down the river in the natural course of events, and this right, when exercised without negligence, is superior to the right of the riparian owner to have his lands preserved from injury. Even though the presence of the logs in .the river causes or adds to injury to the riparian proprietor, this of itself is not a sufficient basis for an action either against the log owners or the boom company, which is simply the agent of the log owners in handling the logs in the river. Riparian owners frequently claim that they are entitled to compensation for any injury- caused to their lands by the floating of logs down the river. But this is not the law, and the gist of the plaintiff's action must be negligence. The negligence must be proved, and certainly cannot be presumed from the mere fact of the presence at a certain time of a certain quantity of logs in the river. The burden of proof throughout the case is on the plaintiff to show by some tangible direct evidence, and not by mere conjecture or suspicion or guesswork, that the presence of these logs in the river at the time complained of was due to some negligence on the part of this defendant.

According to plaintiff the accident occurred merely by the presence of the logs in the river, which presence was legal and rightful but not the act of defendant. It is not contended that defendant ought to have removed the logs from the river in any way except by driving them to their destination, and indeed it had no right to do so. It is not

contended that defendant has done anything which would result in any greater injury than would have been caused had the logs been naturally floating or left to themselves. All the ingenuity displayed on plaintiff's side of the case has failed to suggest anything defendant could have done, or any way by which it could have completed driving after the river froze up or by which it could have prevented the logs remaining in the river. It could not remove or drive them before freezing. It could not drive them after freezing. It did not cause the freezing of the river. It could not control or delay that phenomenon for a single moment. It did not put the logs in the river. They were there of right. It could not take them out of the river. Why, then, was it to blame for their being there? See Davis v. Winslow, 51 Me. 264, 293, 297; Veazie v. Dwinel, 50 Me. 479; Page v. Mille Lacs Lumber Co., 53 Minn. 492, 500; Field v. Apple River, supra.

The jury should have considered the usual course and practice of lumbermen, etc. Field v. Apple River, supra; Coyne v. Mississippi & R. R. Boom Co., supra.

*C. Rosenmeier* and *F. W. Lyon, for respondent.*

"Where logs are allowed to form jams, and cause flowage greater than would otherwise exist, the person or company driving the logs is liable for damages resulting from such excessive flowage, where want of ordinary care is shown in not breaking up the jam." 25 Cyc. 1579. The question whether there were unnecessary jams, causing an overflow, is one for the jury. Anderson v. Thunder Bay, 61 Mich. 489.

The question as to whether there was unreasonable use of a stream in driving logs, whereby a riparian owner was injured, is one of fact for the jury. Outterson v. Gould, 77 Hun, 429; Mitchell v. Lea, 43 Wash. 195.

Defendant's counsel ingeniously attempt to make it appear that there is a difference between the allegation in the complaint that logs were negligently left in the river, and that they were allowed to float as derelicts. To our mind the terms are synonymous. The expression that logs "were left" in the river, would to any unbiased, intelligent mind, suggest that they were left unguarded, not taken care of. Any other construction would be unwarranted, and would be twisting the English language to mean something different from the ordinary acceptation of the words referred to.

LEWIS, J.

Appellant is a corporation organized under the laws of the state of Minnesota for the purpose of driving, floating, and conveying logs down the Mississippi and Rum rivers.

The complaint charges: That during the late fall and early winter of 1906 appellant negligently permitted a large quantity of logs to gather in the Mississippi river, immediately above, along, and below respondent's land, and that when the river froze during the winter of 1906–1907 the logs lodged in the ice in large quantities immediately above, along, and below respondent's land, where they remained until the spring of 1907, when the ice melted and the logs were forced down the river by the current, and the ice and logs from above, all of which lodged against the logs immediately below respondent's land; that by reason of appellant's negligence in permitting logs to be in the river at that time in such large quantities a jam was formed below respondent's land, which deflected and turned a portion of the main waters of the Mississippi river from their natural course over and upon respondent's land, depositing thereon a large amount of logs and débris, which remained there for several weeks and materially interfered with his use of the land, thereby causing damage. Respondent recovered a verdict, and the principal question involved in the appeal is whether the evidence is sufficient to indicate that appellant was in any manner negligent in its use of the river for the purpose of navigating its logs.

The claim of appellant is that the owners of logs had a right to place them in the river at any place and at any time of the year; that appellant was not required to exercise control over the logs, except while engaged in the act of driving them down the stream; and that the logs which were lodged and frozen in the ice opposite and outside respondent's premises were put in the river after appellant made its last drive, and consequently, in the exercise of ordinary care, appellant was not required to assume any supervision of them.

It was conceded at the trial that appellant's jurisdiction for the purpose of driving logs extended from the dam at Brainerd to Minneapolis, and it was shown that the logs were driven by different crews of men, one taking them from the Brainerd dam to Little Falls, and another crew from that point farther down, etc. About four miles above Little Falls appellant maintained what are known as "sorting works," a place where all the logs coming down the river were arrested and retained

for the purpose of sorting and taking out those consigned to the Pine Tree Lumber Company at Little Falls. It appears that sorting operations were carried on from the time logs began to float down the river in the spring until the river froze in the fall. It was shown at the trial that the last drive for the season of 1906 left Brainerd October 14, and reached the sorting works October 27, when the work was suspended because of the cold and frozen condition of the river. Respondent's premises were located several miles below Little Falls, and two or three miles above the Royalton bridge.

The logs which it is claimed were deposited and frozen in the river during the winter of 1906–1907 came through the sorting works after the October 7 drive had left that point. The charge of negligence is that appellant allowed the logs to remain in the river as an obstruction, so that when the ice melted in the spring logs began to come down the river from above and lodged against the jam, thereby creating a larger jam and diverting the water. If appellant was not required to exercise any supervision over the logs sent through the sorting works and which came down the river after October 7, 1906, then there is no liability. The position of appellant seems to be that it was relieved from any such supervision from the fact that at such time it was not engaged in the actual act of driving logs down the river; that it had always been customary to permit the logs to lodge where they would, according to the stage of the water, and to freeze wherever winter overtook them; and that the obligation of appellant was confined to the duty of driving the logs down the stream, at which time only it was required to exercise ordinary care to prevent injury to riparian property. In our judgment, this is a narrow view of appellant's duties and obligations. The law on this subject is well settled in this state.

Appellant concedes that persons using navigable streams for the driving of logs must do so with due deference to the rights of riparian owners, and that such right must be exercised with ordinary care and skill. Coyne v. Mississippi & R. R. Boom Co., 72 Minn. 533, 75 N. W. 748, 41 L. R. A. 494, 71 Am. St. 508; Bowers v. Mississippi & R. R. Boom Co., 78 Minn. 398, 81 N. W. 208, 79 Am. St. 395. We will admit that under appellant's charter it was required to take possession of and drive all logs placed in the river between Brainerd and Minneapolis, and we concede that the owners of the logs had the right to deposit them in the river at any time of the year; but it does not

follow that appellant was not required to exercise reasonable care to control them, even when not engaged in making a drive. If the jam formed by the collection of logs near respondent's premises in the fall was not sufficient to deflect the water upon his land, then was not appellant required to break up the jam before permitting more logs to come down and lodge against it in the spring? True, such care would require appellant, when it turned logs out of the sorting works, or permitted them to go down the river after the driving season closed, to anticipate that they might lodge in shallow places, or on rocks or islands, become frozen in the ice, and thus be an obstruction to the navigation of logs during the following spring. We find nothing in the evidence to indicate that such supervision was either impossible or unreasonable.

In other jurisdictions similar companies have been required to anticipate damages of this character. We may specify the case of Witheral v. Muskegon, 68 Mich. 48, 35 N. W. 758, 13 Am. St. 325. There the boom company had possession of the river in which its men were running logs, which jammed below the land of the riparian owner, and the company continued to run logs against the jam until it extended and filled the river above the land of the plaintiff, where it remained for about a month. The court said: "A mere jam of logs in the river does not, in itself and by itself, constitute negligence upon the part of the booming company running the river; but the existence of such jam for a month or more, and the continued running of logs in such a manner as to increase the jam during such period, does constitute negligence, unless there is a showing that such a state of things could not reasonably be avoided." In the case of Wooden v. Mt. Pleasant, 106 Mich. 412, 64 N. W. 329, where the logging company maintained that it had the right to fill the bed to the stream with logs in the winter, when it was not navigable, and obstructed the natural flow of water for months, the court held that the company was not using the stream for navigation, and its act was unreasonable and unlawful.

It does not follow that, because appellant had authority to drive logs between Brainerd and Minneapolis, it was permitted to let logs float along unguided under all circumstances and at all seasons of the year, without regard to the condition of the weather or of obstructions which might be formed by ice and jams.

2. On the question of damages a witness for respondent was asked: "What was the damage, or how much less was the land of Mr. Mandery worth, by reason of the damage done by the washing and destruction of the fence and of the trees there at that time, [than] it was before?" This was objected to on the ground that it was not the proper measure of damages. A similar objection was considered and decided in the case of Hueston v. Mississippi & R. R. Boom Co., 76 Minn. 251, 79 N. W. 92, where the court said: "It is the most common thing in the world, in the trial of actions of this and analogous classes, to ask a witness how much less, in his opinion, the premises were worth after the injury than they were before, and then to particularize by introducing evidence as to the nature and extent of the different items which go to make up this estimated total diminution of value. * * * "

We find none of the other assignments of error well taken, and they require no special mention.

Affirmed.

On August 7, 1908, the following opinion was filed:

PER CURIAM.

Application for a rehearing having been granted in deference to appellant's claim that the court had incorrectly understood, and had misapplied, certain concessions of appellant at the trial, as to its charter powers, and the cause having been reargued and submitted upon all the issues in the case, and having been fully reconsidered by the court;

It is ordered that the original opinion be adhered to and that the stay heretofore granted herein be and it is vacated.