## JAMES CASEY v. MISSISSIPPI & RUM RIVER BOOM COMPANY.[1]

### July 23, 1909.

### Nos. 16,203—(174).

**Negligence in Controlling Logs — Damage to Riparian Owners.**

Action to recover damages to the farm of the plaintiff, a riparian owner, by reason of its overflow, alleged to have been caused by the negligent acts of the defendant in the control of logs in the Mississippi river in connection with its booms and piers therein, at Durnam's Island. Verdict for the plaintiff. *Held:*

1. Sp. Laws 1862, c. 86, § 15, providing that a committee of log owners shall determine the time when logs shall be turned out of the booms, does not absolve the defendant from the duty to exercise due care in controll-

[1]Reported in 122 N. W. 376.
108 M.—32.

ing the movements of logs in the river in connection with its booms, so as to prevent injury thereby to riparian owners.

2. The defendant, as against the public, has the right, by virtue of its charter, to obstruct the river with such structures, and to maintain and operate them, as are necessary to enable it to discharge its duty to the public as a carrier of logs in the river; but it has no right to do this so as to overflow and damage the land of riparian owners, without compensation.

3. The trial court did not err in its instructions to the jury, the verdict is sustained by the evidence, and the award of damages is not excessive.

Action in the district court for Anoka county to recover $1,500 damages on account of injury to plaintiff's land. The case was tried before Giddings, J., and a jury which returned a verdict in favor of plaintiff in the sum of $100 for injury for washing away the bank of his farm, and $450 for loss of the use of the land. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*Dodge & Tautges,* for appellant.

*Will A. Blanchard* and *G. H. Wyman,* for respondent.

START, C. J.

This is an appeal from an order of the district court of the county of Anoka denying the defendant's alternative motion for judgment or for a new trial. The complaint alleged two causes of action. The first one was for the recovery of damages for permanent injuries to the farm of the plaintiff by the washing away of two acres thereof by reason of the alleged negligent acts of the defendant. The second one was for the recovery of damages for the loss of the use of forty acres of the farm during the year 1907, by reason of such acts of the defendant. There was a verdict for the plaintiff for washing away of the bank of his farm, $100, and for the loss of the use of the farm, $450.

1. The first contention of the defendant is that there is no evidence to sustain the verdict as to either alleged cause of action.

The evidence tends to show that the plaintiff, in the year 1907, was in possession of a farm bordering on the river Mississippi, some three or four miles above Durnam's Island; that he was a lessee of a part of the farm and in possession of the balance, claiming to be the owner

thereof. It is admitted that the defendant constructed and has maintained for many years extensive works, consisting of booms, piers, and pilings, in the river, at the island, to facilitate the floating and driving logs therein, as authorized by its charter. The evidence also tends to show that the piers and booms so constructed by the defendant extend entirely across the river, from the easterly shore below the foot of the island to the westerly shore at the north thereof; that late in the fall of 1906 the defendant drove large quantities of logs down the river, which were lodged in the boom at Durnam's Island; that the logs filled the river full, from bank to bank, from the sorting gap below the island for a long distance above it; that the logs made a solid jam or pack entirely across the river, so that any logs or ice floating down the river would lodge upon the jam or pack of logs and remain there; that on March 27, 1907, when the ice and logs came down, they formed a jam upon the pack, which extended up to the plaintiff's farm; that by reason of the jam so formed the water in the river at or near the farm of plaintiff rose in a short time more than nine feet; and, further, that such rise of the water, so caused, resulted in forcing the water back over the plaintiff's farm, carrying therewith large quantities of the logs and river débris, whereby the farm was washed and damaged to some material extent. There was neither evidence nor claim on the part of the plaintiff that the works were improperly constructed or maintained.

It is the claim of the defendant that it had no control of the movement of the logs in the river above its works, but that such control was vested absolutely in the owners of the logs, and that the concession of the defendant to the contrary in the case of Mandery v. Mississippi & R. R. Boom Co., 105 Minn. 3, 116 N. W. 1027, 1135, was inadvertently made. This claim is based upon section 15, c. 86, p. 360, Sp. Laws 1862, providing for a committee of log owners, who shall determine the times of turning logs out of the boom. This statute cannot be construed as relieving the defendant, as a carrier of logs in the river, from exercising due care in controlling the movements of logs in the river and thereby preventing the accumulation of logs in the bed of the stream above its works at the close of navigation, so as to form a destructive jam when the spring floods come. Mandery v. Mississippi & R. R. Boom Co., supra.

This seems to be the view of the defendant, for its manager testified as a witness at the trial as follows: "Q. It acts simply as a carrier of logs? A. Yes, sir. * * * Q. And they have to take care of all the logs placed in the river? A. Yes, sir. Q. Does the boom company have any control over the time when the logs are to be delivered to it? A. No, sir." Or, in other words, the boom company has no control over the time the logs are to be delivered to it, but it must take care of them after they are once placed in the river. The reason assigned by the defendant, as testified to by its manager, for the accumulation of logs at its Durnam Island works when the river froze up in the fall of 1906, was that owing to the rising of the river late in the fall the logs came down faster than they could be sorted, and that all were sorted that it was possible, but they came down too late to sort all of them.

The rights of the defendant in the river and its liability to riparian owners for injury to their land by its acts have been so often before this court that it is unnecessary to discuss the questions. The defendant, as against the public, has the right, by virtue of its charter, to obstruct the river with all reasonably necessary piles, booms, and structures to enable it to discharge its duty as a carrier of logs in the river, and to maintain and operate them; but it has no legal right to do this so as to overflow and damage the land of a riparian owner, without first acquiring the right and making compensation therefor. Weaver v. Mississippi & R. R. Boom Co., 28 Minn. 534, 11 N. W. 114; McKenzie v. Mississippi & R. R. Boom Co., 29 Minn. 288, 13 N. W. 123; Hueston v. Mississippi & R. R. Boom Co., 76 Minn. 251, 79 N. W. 92; Bowers v. Mississippi & R. R. Boom Co., 78 Minn. 398, 81 N. W. 208, 79 Am. St. 395; Mandery v. Mississippi & R. R. Boom Co., supra. The basis of its liability to riparian owners in such cases is not necessarily negligence in the construction of the obstructions in the stream; hence the concession in this case that the defendant's works were properly constructed is not here relevant.

The claim of the plaintiff, briefly stated, is that the defendant by the exercise of ordinary care might have prevented the accumulation of such a body of logs at its works at the island, at the time the stream froze up, as did accumulate there, and that it might have reasonably anticipated that this would be liable to cause such a jam, when the

spring freshets came, as would be liable to injure others, especially riparian owners. The claim of the defendant was to the effect that the injury of the plaintiff's farm, if any, was not due to any act or omission on its part, but to an extraordinary and sudden rise of the stream early in the spring. The trial court submitted the respective claims of the parties to the jury. The defendant insists there was no evidence of want of care on its part; but a consideration of the evidence leads us to the conclusion that the evidence was sufficient to take the case to the jury, and that it is sufficient to sustain a verdict for the plaintiff in some amount. The defendant's motion for judgment was properly denied.

2. The next group of assignments of error relate to the rulings of the trial court as to the admission of evidence. There are a dozen or more of them, of which counsel for the defendant only says: "It would seem to be unnecessary to argue these several assignments in detail, or to cite authorities. We submit them for the consideration of the court without further argument." This is simply a reiteration of the assignments of error, and is a waiver of the assignments. We decline to consider them. Peterson v. City of Red Wing, 101 Minn. 62, 111 N. W. 840.

3. The defendant urges several alleged errors in the charge of the court to the jury. The instructions complained of were to the effect that the plaintiff claimed that the defendant, having knowledge of the history of the river, was bound to take notice of the ordinary operation of the law of nature in the going out of the ice in the river when it breaks up in the spring, and to exercise ordinary care to prevent injury from the water, ice, and logs, when the ice breaks in the spring; that it is the claim of the plaintiff that the defendant was negligent in allowing a large quantity of logs to accumulate at its works; and to remain there during the fall and winter; and, further, that it was not the intention of the court to exclude from the consideration of the jury any act of negligence by the defendant in allowing logs to accumulate and jam on the piers and booms at the head of the island in 1906, and to remain there during the winter. The defendant's objections to these instructions are that there was no evidence tending to support the plaintiff's claims; that the defendant's works at the island were

necessarily permanent and essential to enable it to carry out the purposes for which it was organized; and, further, that the defendant had no control over the number of logs or the time when they should be placed in the river or released from bondage at its various booms above the plaintiff's land. In view of the legal duty and liability of the defendant to riparian owners for damages caused by the placing of their piers and booms in the river, and the evidence in this case, to which reference has been made, we are of the opinion that it was not error to give the instructions complained of.

4. The last contention of the defendant is that the damages awarded are excessive. The evidence justifies the conclusion that they are liberal, but not so clearly excessive as to justify any interference with the verdict in this respect.

Order affirmed.