JOHN LIIMATAINEN v. ST. LOUIS RIVER DAM & IMPROVEMENT COMPANY.[1]

October 25, 1912.

Nos. 17,768—(63).

**Maintenance of dam — former judgment bar to action.**

Where the plaintiff, in an action for damages resulting from an overflow caused by the backing up of the water from the defendant's dam, so framed his complaint that he was restricted to proof of certain specific acts as having caused such backing up and overflow, the cause of action was nevertheless predicated upon the defendant's violation of his ultimate duty to

[1] Reported in 137 N. W. 1099.

so conduct and maintain its dam as not to violate the rights of the plaintiff, whose lands lay further up the river; and hence a judgment in favor of the defendant in such action was a bar to a subsequent action between the same parties for the same relief sought in the former action, though the allegations of the complaint in the second action were sufficiently broad to admit of proof of any and all specific acts or omissions of the defendant in violation of its ultimate obligation to the plaintiff with respect to the maintenance of the dam.

Action in the district court for St. Louis county to recover $900 damages to plaintiff's land alleged to have been caused through defendant's negligent operation of its dam. The answer denied the allegations of the complaint and set up that the action was barred by a former judgment in a similar action between the same parties. The facts are stated in the opinion. The case was tried before Dancer, J., and a jury which returned a verdict in favor of plaintiff for $500. From an order denying defendant's motion for a new trial, it appealed. Reversed.

*William B. Phelps,* for appellant.

*Arnold & Pickering,* for respondent.

PHILIP E. BROWN, J.

In order that the questions involved in this case may be understood, it is necessary to set out the controlling facts alleged in considerable detail, and also to follow closely the phraseology of the two complaints hereinafter referred to. These facts are as follows:

In September, 1909, the plaintiff brought an action against the defendant, the allegations of the complaint filed therein being, substantially, that for a long time prior to and likewise since January, 1909, he had been in possession of a certain described eighty acres of land in St. Louis county, occupied by him as a homestead, and a portion of which was in crop during the season of that year; that prior to July 15, 1909, the defendant closed the gates of a certain dam across the said river, which was owned, operated, and maintained by the defendant below the above mentioned land, and

stopped the flow of water and caused it to accumulate above the said dam to such extent that it ran over the top thereof, overflowed the banks of the river above the same, and that the defendant caused the water to back up in the river and negligently caused it to overflow the said land, because of the defendant's failure to properly manage and regulate the accumulation of water in the dam, and because the defendant negligently caused an unusual and unsafe quantity of water to accumulate therein and to overflow the banks of the river and run across the adjacent lands; that the waters of the river were wrongfully, negligently, and unlawfully forced out of their natural and usual channel, and caused to flow across the lands so occupied by the plaintiff, thereby injuring his crops, etc., to the damage of the plaintiff in the sum of $750, for which amount judgment was demanded. The defendant answered this complaint, admitting its ownership of the said dam and denying all other allegations. In February, 1910, on the trial of the cause to a jury, a directed verdict in favor of the defendant was returned because of the failure of the plaintiff to establish a cause of action; and subsequently judgment was entered for the defendant on this verdict.

After such verdict the plaintiff brought another action against the defendant, alleging in his complaint that he settled upon the land described in the complaint in the first action, prior to February, 1909, and had since been in possession thereof, the same "being a tract of not more than one hundred and sixty acres, consisting of not more than two distinct tracts of land belonging to the United States on which settlement is not prohibited by the general government," and that he had occupied and cultivated the said land for five years and had made improvements thereon prior to the said date exceeding five hundred dollars in value, and then had growing crops thereon. This complaint further alleged the defendant's ownership, operation and maintenance of a dam across the St. Louis river as in the complaint in the former action, and set out that "during the month of July, 1909, and for a long time prior and subsequent thereto, the defendant negligently and carelessly maintained and operated said dam and negligently and carelessly failed and neglected to exercise proper care and supervision of said dam, whereby

large quantities of water from said St. Louis river were, during said month of July, 1909, diverted from the natural course of said river, over, in and upon the land so occupied by the plaintiff as aforesaid and the defendant did thereby trespass upon and completely submerge the cultivated portion thereof," and injured the plaintiff's crops, etc., to the damage of the plaintiff in the sum of $900, for which judgment was demanded.

The defendant answered this complaint in the same form as in the former action, and in addition thereto set up such former action in bar. By way of reply the plaintiff admitted the bringing of the former action involving the property mentioned in the complaint in the second action, but denied that the same cause of action was set forth in both complaints. The cause was tried to a jury and a verdict was returned in favor of the plaintiff for the sum of $500.

On the trial of the cause the court ruled, in effect, that the judgment roll in the former action was irrelevant and inadmissible in evidence, to which ruling the defendant excepted, and, here, having appealed from an order denying its motion for a new trial, assigns such ruling as error. Some other points have been raised, but the determinative and ultimate question involved is the correctness of this ruling, and this in turn depends upon whether the verdict and judgment in the former action is a bar to the instant case.

It is conceded that the transactions referred to and the relief sought in both actions are the same, and the defendant claims that the proceedings had in the first action constitute an estoppel by judgment against the plaintiff in the present action, and that the latter is barred by the proceedings culminating in the judgment rendered in the former action.

One action only lies to redress a single wrong, or, as frequently expressed, a single tort gives rise to a single cause of action, and a plaintiff cannot be permitted to indulge in unnecessary litigation by splitting up a cause of action and prosecuting more than one suit thereon; the penalty imposed by the law for the violation of this rule being the application of the doctrine of res adjudicata, which doctrine is based upon the legal maxims that "a man should not be twice vexed for the same cause," and that "it is for the public

good that there be an end of litigation." State v. Torinus, 28 Minn. 175, 9 N. W. 725. This doctrine is well stated by Mr. Justice Field in Stark v. Starr, 94 U. S. 477, 485, as follows:

"It is undoubtedly a settled principle that a party seeking to enforce a claim, legal or equitable, must present to the court, either by pleadings or proofs, or both, all the grounds upon which he expects a judgment in his favor. He is not at liberty to split up his demand, and prosecute it by piecemeal, or present only a portion of the grounds upon which special relief is sought, and leave the rest to be presented in a second suit, if the first fail. There could be no end to litigation if such a practice were permissible."

This declaration of the law is but a composite of our own decisions. Thus, in H. W. Wilson Co. v. A. B. Farnum & Co. 97 Minn. 153, 156, 106 N. W. 342, it is stated: "Where the cause of action is entire and indivisible, the judgment determines all the rights of the parties upon it, although it may be but partially presented to the court. It is the rule that a single cause of action cannot be split up into several suits."

So also in King v. Chicago, M. & St. P. Ry. Co. 80 Minn. 83, 82 N. W. 1113, it is declared: "It has long since become settled in this st
te that a single, entire cause of action cannot be split up into several suits, and that one recovery, although it be in part recovery for the entire injury, is effectual as an estoppel."

And it might be added that, as such an estoppel must be mutual, and hence that both of the parties to the action must be bound by the judgment, or it will not be a bar in favor of either, a judgment for the defendant under like circumstances will result in the same consequences. Columb v. Webster Mnfg. Co. 84 Fed. 592.

In Stitt v. Rat Portage Lumber Co. 101 Minn. 93, 111 N. W. 948, it was announced that the true test of the constituents of an estoppel by judgment is whether the causes of action are the same; and this is practically the sole question necessary here to be determined, which, of course, involves the consideration of what constitutes a cause of action. The term "cause of action" is defined in King v. Chicago, M. & St. P. Ry. Co. supra, by quoting Mr. Pomeroy's definition. We do not deem it necessary to repeat

this definition here, for our task is not so much to discuss the nature of causes of action in general as to apply the well-established general principles to the instant case. Suffice it to say, then, that the act or conduct constituting that element of a cause of action which is commonly called the delict, may consist either of a single specific act or omission, or may be the resultant of several acts or omissions or of both acts and omissions, and that in either of the latter cases the singleness and indivisibility of the delict is not affected by the number of the specific occurrences out of which it grows. In other words, a cause of action for wrong is predicated upon the violation of an ultimate duty, and though the performance of such duty may require the doing or omission of many separate and distinct acts, the omission or doing of which would constitute a violation of the ultimate duty, it is nevertheless the violation of the latter, and not the specific acts or omissions, which constitutes the actionable wrong or delict. See Patterson v. Wold, 33 Fed. 791; Texas v. Buckalew (Tex. Civ. App.) 34 S. W. 165; Hueston v. Mississippi & R. R. Boom Co. 76 Minn. 251, 79 N. W. 92; Armstrong v. Chicago, M. & St. P. Ry. Co. 45 Minn. 85, 47 N. W. 459; McCain v. Louisville, 97 Ky. 804; Columb v. Webster Mnfg. Co. supra.

Furthermore, the singleness of a cause of action is not necessarily affected by the variety or severability of the damages suffered. See King v. Chicago, M. & St. P. Ry. Co. supra. Cases to a similar effect might be cited almost without limit, but we deem the above sufficient. In the Armstrong case, supra, the complaint alleged that the plaintiff delivered a mare to the defendant, a common carrier, for carriage, and charged negligence on the part of the defendant in the care of the animal while in its custody, one paragraph alleging negligence while the mare was in the possession of the defendant as carrier, and the other charging negligence after the arrival of the mare at destination and while she was in the defendant's custody as warehouseman. It was held that only one cause of action was alleged. "Although inaccurately so called," said Mr. Justice Mitchell, in delivering the opinion of the court, "the complaint did not state two causes of action, but only one, to-wit, negligence in

the care of the property, constituting a breach of defendant's contract of bailment." In McCain v. Louisville, supra, an action for injuries caused by the "negligence of defendant's agents in giving an unusual and loud whistle of its engine after plaintiff has crossed the track in safety, and thus frightening the (plaintiff's) horse and causing the injury," was held barred by a judgment against the plaintiff in a former action wherein it was alleged that the plaintiff's horse was frightened by reason of the fact that the "train approached the public road-crossing at a dangerous rate of speed, without giving the usual and customary notice of its approach, whereby the appellant (plaintiff) was decoyed so near the crossing that his horse became frightened," etc.

In Columb v. Webster Mnfg. Co. supra, it was held that a judgment in an action for personal injuries alleged to have been caused by the defendant's negligence was a bar to a subsequent action between the same parties for the same injury based upon the same transaction, though additional acts of negligence were alleged in the second action. It was declared by the court that the complaint in the second action merely alleged "additional acts of negligence, operating upon the same occurrence and tending to the same result."

These cases, and especially the one last referred to, which has been cited and approved many times (see Hein v. Westinghouse Air Brake Co. 172 Fed. 524, 526; Bresnahan v. Tripp Giant Leveller Co. 99 Fed. 280, 283; The New Brunswick, 125 Fed. 567, 569), are, we think, conclusive of the question before us. In each of them the violation of the ultimate duty was held to constitute the delict, as distinguished from the specific acts by which such violation was manifested. And so in the instant case, the ultimate duty of the defendant was so to conduct and maintain its dam as not to violate the rights of the plaintiff, whose lands lay further up the river, and it was the violation of this duty which was alleged in both of the actions here involved, though in the former action the violation was alleged in terms so restricted and specific that, under the rule applied in Scarlotta v. Ash, 95 Minn. 240, 103 N. W. 1025, the proofs were restricted by the court below to the particular, specific

act of closing the gates of the dam, while in the second action the ultimate duty and its violation were alleged in terms sufficiently general to admit of proof of any and all specific manifestations of the defendant's disregard of his duty. The complaint in the second action states but a single cause of action—such is manifest from the mere reading of the complaint, and the plaintiff does not contend otherwise—and yet thereunder would be provable every allegation of the complaint in the former action and the cause of action alleged in the second complaint would thereby be sustained. This alone, we think, demonstrates that the cause of action alleged in the two complaints is identical, and, further, satisfies the test laid down in West v. Hennessey, 58 Minn. 133, 59 N. W. 984, and relied upon by the plaintiff; the observations there made on page 137 being confined to cases involving different causes of action.

As stated by Chief Justice Gilfillan, in Thompson v. Myrick, 24 Minn. 4, 12: "If, then, the cause of action upon which this action is brought, is the same as that upon which the first action was brought—if this action presents no new cause of action, but only new grounds for relief upon the same cause of action—the judgment is a bar." This proposition is unquestionably sound both in reason and upon authority, and when stated without its condition it represents the conclusion which we have reached in the instant case.

Order reversed.